**Celestus BLAIR, Jr., Plaintiff,**

v.

**Steven SHANAHAN, individually and in his official capacity, James Lassus, individually and in his official capacity, Christopher Breen, individually and in his official capacity, Jeffrey Levin, individually and in his official capacity, Frank Jordan, individually and in his official capacity, and The City and County of San Francisco, Defendants.**

**No. C–89–4176 WHO.**

United States District Court,
N.D. California.

March 12, 1992.

Michael C. Hallerud, Robert J. Keyes, D. Kirk Jamieson, Nancy L. Asbill, Pettit & Martin, Margaret C. Crosby, Alan L. Schlosser, Edward M. Chen, Matthew A. Coles, American Civ. Liberties Union, San Francisco, Cal., for plaintiff.

Louise H. Renne, City Atty., George A. Riley, Randy Riddle, G. Scott Emblidge, Deputy City Attys., Enid A. Camps, Deputy Atty. Gen., Atty. General's Office, San Francisco, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiff, Celestus Blair, Jr. ("Blair"), is a former panhandler.[1] He brought this suit challenging the constitutionality of § 647(c) of the California Penal Code [2] and enforcement of this statute by defendants under the United States and California Constitutions. On September 24, 1991, this Court issued an Opinion and Order ("Opinion") declaring § 647(c) facially unconstitutional under the federal constitution. *Blair v. Shanahan*, 775 F.Supp. 1315 (N.D.Cal. 1991). Under that Opinion, several remaining issues were reserved for resolution by trial or settlement of the parties. On December 6, 1991, defendant City and County of San Francisco (the "City") made an offer of judgment under Rule 68 [3] of the Federal Rules of Civil Procedure that was unconditionally accepted by Blair on December 10, 1991. On January 2, 1992, judgment was

---

1. "Panhandler," derived from the extended forearm of a beggar resembling a pan handle, is defined by Webster's Third New International Unabridged Dictionary as "one that panhandles" and "an able-bodied street beggar." The verb "panhandle" is defined by Webster's as "to stop people on the street and ask for money often telling a hard-luck story," "to accost on the street and beg from," and "to get (as money) by panhandling." Webster's Third New International Unabridged Dictionary 1630 (1971).

2. That statute provides in relevant part that anyone "[w]ho accosts other persons in any public place or in any place open to the public for the purpose of begging or soliciting alms" is guilty of a misdemeanor. Cal.Penal Code § 647(c).

3. Rule 68 of the Federal Rules of Civil Procedure provides in pertinent part:

> a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party ... to the effect specified in the offer.... If ... the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance ... and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

entered in this case pursuant to the Rule 68 offer of judgment. In the motion presently before this Court, the City moves under Rule 60(b) of the Federal Rules of Civil Procedure to modify or vacate that judgment. The Court denies the City's motion because it finds that: (1) the accepted offer of judgment represents a meeting of the minds of the parties; (2) there was no mistake in the accepted offer of judgment justifying intervention under Rule 60(b); and (3) equitable considerations do not require alteration of the judgment. In addition, the Court rejects the attempted intervention in this motion by the State of California (the "State") because the State does not have standing to argue any of the issues currently before this Court.

## I.

A brief history of events after issuance of the Court's Opinion declaring § 647(c) unconstitutional is helpful. The City moved for an order under Rule 54(b) of the Federal Rules of Civil Procedure certifying the Opinion for appeal. On October 23, 1991, the Court denied that motion to avoid piecemeal appeals. In a letter dated October 10, 1991, Blair presented a settlement offer to the City. The relevant terms of this offer are summarized as follows:

1. The City would stipulate to 42 U.S.C. § 1983 liability concerning Fourth Amendment violations for arrests without probable cause;

2. The City would stipulate to 42 U.S.C. § 1983 liability for First Amendment violations involving Blair's arrests. "The stipulation could provide expressly that the City's rights to seek appellate review of the court's determination that § 647(c) violates the First Amendment are not impaired by this stipulation."

3. The City would stipulate to 42 U.S.C. § 1983 liability for Fourteenth Amendment violations. Again, appeal

rights could be expressly reserved in the stipulation.

4. The City would stipulate to liability for arrests in violation of the California Constitution.

5. The City would stipulate to damages of $20,000 and to Blair's status as the "prevailing party" (entitling Blair to costs and attorney's fees).

6. The City and State would stipulate to expungement of Blair's arrests under § 647(c).

7. The City would approve, in form only, a judgment declaring § 647(c) unconstitutional on its face. The stipulation could provide expressly for the City's right to seek appellate review of that determination.

8. Blair would dismiss with prejudice all state and federal claims against all individual defendants:

9. Blair would approve in form only a judgment dismissing his freedom of speech claim under the California Constitution. The stipulation could expressly provide for Blair's right to seek appellate review of that judgment.

Decl. of Michael C. Hallerud ("Hallerud Decl."), filed Jan. 17, 1992, Ex. A. The City never accepted or rejected this offer. On November 29, 1991, Blair requested a mandatory settlement conference, which was scheduled by this Court for December 11, 1991, before Magistrate Judge Claudia Wilken.

After further settlement discussions, on December 4, 1991, George Riley ("Riley"), attorney for the City, spoke with Michael Hallerud ("Hallerud"), Blair's attorney, concerning basic terms of a "settlement framework" for which Riley would attempt to gain approval from the City's Police Commission. In a letter to Blair, Hallerud memorialized this "settlement framework." [4] The "settlement framework" nev-

---

**4.** The relevant terms of the "settlement framework" are summarized as follows:

1. The City will expunge the arrests.
2. Blair will dismiss claims arising from his February 10, 1989, arrest and dismiss all individual defendants.

3. The City will stipulate to liability under California law and 42 U.S.C. § 1983 for arrests without probable cause.
4. The City will stipulate to *Monell* liability for First Amendment violations. "I understand that this stipulation would preserve the City's right to appeal Judge Orrick's declaratory judg-

er matured into an offer from one party to the other. It simply served as a framework for discussion of possible terms. Thus, the City never accepted or rejected Blair's offer of October 10, 1991, the only formal offer of settlement. The City did not counteroffer until December 6, 1991.

On December 6, 1991, the City sent Blair an offer of judgment under Rule 68. This offer of judgment provides as follows:

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure, defendants make the following offer of judgment. Defendant City and County of San Francisco ("City") offers to allow judgment to be taken against it on plaintiff's first, second, third and seventh claims for relief with respect to plaintiff's arrests on November 25 and 30, 1988, and May 20 and June 16, 1989. Defendant City further offers to allow judgment to be taken against it for damages in the total amount of $4,000. Defendant City also offers to allow judgment to be taken against it regarding plaintiff's request for an order expunging all records relating to plaintiff's detentions, arrests, and searches on each occasion set forth in the First Amended Complaint. Finally, the City offers to allow judgment to be taken against it on the ninth claim for relief in accordance with the Court's Opinion and Order filed September 24, 1991.

> The effect of plaintiff's acceptance of this offer will be an entry of judgment under Rule 54 of the Federal Rules of Civil Procedure (1) granting the relief set forth above, (2) [dismissing] the remaining causes of action and (3) dismissing with prejudice all defendants other than the City.

> This offer of judgment does not cover any attorneys' fees and costs incurred to date to which plaintiff may be entitled.

> The issue of attorneys' fees and costs shall be resolved in a separate proceeding through a petition to the Court.

Hallerud Decl., Ex. F. The offer of judgment was unconditionally accepted by Blair on December 10, 1991.

As is clear from the text of the offer, the Rule 68 offer is substantially different from Blair's settlement offer. Primarily, unlike Blair's offer, the Rule 68 offer is silent as to appeal rights.[5] In addition, the damages to be awarded Blair are drastically reduced, and Blair's appeal rights as to the constitutionality of the statute under the California Constitution are foreclosed, because that claim is dismissed with prejudice under the Rule 68 offer. This offer, as a Rule 68 offer of judgment rather than a simple settlement counteroffer, also carries with it the specific threat of dramatic cost shifting if Blair had rejected it and subsequently won a less favorable judgment (see discussion below in section II.C.).

These substantial differences indicate to the Court that the Rule 68 offer was not a simple counterproposal made in furtherance of good-faith negotiation. Rather, the Rule 68 offer was qualitatively different from Blair's settlement offer.

At a hearing on January 2, 1991, the Court expressed uncertainty on two grounds as to the settlement at which the parties had arrived. The first was a misplaced word; the offer of judgment used "denying" when "dismissing" was intended. This mistake was clarified at the hearing and amended by the Court with the parties' agreement. The second had to do with the appealability, if any, of a judgment entered pursuant to the accepted offer of judgment. When questioned on this issue, the City's attorney asserted that "it

---

ment that § 657(c) [*sic*] facially violates the First Amendment. While not discussed, I presume Mr. Riley understands that you would retain your right to cross-appeal on the corresponding free speech issues under the California constitution."

5. Attorneys' fees would be deferred to the conclusion of the litigation;

6. Damages would be $4,000.

Hallerud Decl., Ex. E.

**5.** Likewise, the unconditional acceptance of this offer from Blair is silent as to appeal rights. The acceptance reads as follows:

> On behalf of our client, Celestus Blair, Jr., we hereby give you written notice that Mr. Blair accepts unconditionally the offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure that you made on behalf of defendants in your letter dated December 6, 1991....

is still a live controversy as long as the City doesn't satisfy the judgment.... and we researched this area, and I agree it is a very murky area—." RT, Jan. 2, 1991, at 6:16–19. Blair's attorneys then indicated that they believed no appeal would lie from the offer of judgment. The Court subsequently entered the judgment.[6] The City now moves to vacate or modify the judgment entered pursuant to its Rule 68 offer of judgment.

## II.

The City makes several arguments in seeking to vacate or modify the Rule 68 offer of judgment. All of these arguments fail. First, the City argues that the offer of judgment *does not preclude* an appeal. This argument will not be explored because it is properly addressed to the Ninth Circuit and not to this Court. Second, the City presents two factually related but conceptually distinct arguments. It argues on one hand that the Rule 68 offer should be analyzed under standard contract law canons. Under contractual analysis, the City asserts that Blair's belief that acceptance of the offer of judgment bars an appeal was a "misunderstanding" that precluded the possibility of a "meeting of the minds," and no valid contract was created. The related argument the City presents is that under Rule 60(b) of the Federal Rules of Civil Procedure, the offer should be vacated or modified due to mistake.[7] The City argues that because the parties were mistaken as to each other's understanding of the legal result of the judgment, the Court may vacate or modify the judgment as necessary to effectuate the actual intent of the parties. It also argues on various grounds that equity requires the Court to vacate the judgment so that the City's ap-

peal will not be jeopardized by a procedural miscue.

As a final issue, the State attempts to intervene to request that the judgment be modified so that the State would be able to appeal the judgment. The Court rejects the State's argument because the State does not have standing to argue the issues currently before the Court.

### A.

■ As to the first argument, that no contract was formed because there was no "meeting of the minds," the City relies on *Callie v. Near*, 829 F.2d 888 (9th Cir.1987). *Callie* merely held that "[w]here material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Id.* at 890. In that case, no signed agreement was ever entered into between the parties. Appellant's lawyer sent a letter proposing certain terms of settlement and respondent's lawyer sent a reply letter with similar but different terms. No party ever signed the other's letter. Thus, *Callie* involved, in part, a dispute as to the actual *existence* of the settlement contract. Here, in contrast, we have a clear and unambiguous contract formally offered and unconditionally accepted.

The City further argues that the terms of the contract created by the Rule 68 offer were unclear and that, therefore, there was no "meeting of the minds." *Callie* also involved a dispute as to a *material term* of the alleged settlement. In that case, the theory of the defendant's liability to be settled upon was crucial in that if the settlement claimed fraud or deceit, the defendant's career in real estate syndications would be finished. Appellants there claimed that no liability theory was ever

---

6. In addition, on January 2, 1992, the Court signed and filed a Stipulation and Order extending time for Blair to file a cost bill or an application for attorneys' fees "[b]ecause an appeal may be filed...." Stip. and Order Extending Time for Pl. to File a Cost Bill or An Application for Attorneys' Fees at 2. The Court signed and filed a second Stipulation and Order on January 2, 1992, expunging all records regarding the arrests set forth in Blair's first amended complaint.

7. Rule 60(b) provides in pertinent part that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect...."

settled upon because the original letter was silent and the reply letter specifically required a finding of fraud and deceit. Because the agreement in *Callie*, if it existed, contained a contradictory resolution of an essential term, the lower court erred in not conducting an evidentiary hearing. But here we have no such uncertainty as to the terms of the agreement; the offer and acceptance are both silent as to appeal rights. *Callie* is inapposite.[8]

The City urges the Court to find a misunderstanding as to the right to appeal between the parties in the terms of this Rule 68 offer. It argues that the offer created uncertainty on two grounds. First, the offer syntactically separated resolution of the complaint's ninth claim (requesting the declaration of facial unconstitutionality) from the other claims. Second, the City's offer makes reference to Rule 54 of the Federal Rules of Civil Procedure. Together, the City then argues that these elements of the offer indicate the City's intent to preserve for appeal this Court's declaration as to the constitutionality of § 647(c).[9] Those oblique references simply do not rise to the level of a disputed term of the contract. Whatever the subjective intent of the drafter, objectively read, the Rule 68 offer is silent as to appeal rights. Therefore, there was no misunderstanding as to any material term of the Rule 68 offer.[10]

The City claims that "the parties attached entirely different meanings to the Rule 68 offer and that there was no meeting of the minds." City's Reply Br. ("City's Br."), filed Jan. 24, 1992, at 16, 11. 26–27. That statement is simply wrong.

The parties currently reach different conclusions as to whether or not an appeal lies from entry of that judgment (an issue upon which the contract is completely silent). The disagreement concerns the legal effect of this contract, concerning an issue upon which the offer was silent. There is no dispute concerning a term present in the contract itself. Appeal, although a critical issue in settlement discussions, was not a material term of the Rule 68 offer. In the contract that was offered and accepted, there was a meeting of the minds as to every material term.

In *Erdman v. Cochise County, Arizona*, 926 F.2d 877 (9th Cir.1991), the Ninth Circuit reversed the lower court's decision to rescind an accepted Rule 68 offer of judgment. In that case, the offeror failed "to recognize that 'costs' in actions under 42 U.S.C. § 1983 automatically include attorney fees under 42 U.S.C. § 1988." *Id.* at 879. Thus, the offeror was obliged to pay a substantially larger award than anticipated. The defendant sought rescission due to the unartful drafting of the offer. The *Erdman* court rejected such logic. It held, " 'it would be ludicrous and manifestly unjust to allow defendants to argue after the fact that their offer really means more than it says.' " *Id.* at 880 (quoting *Rateree v. Rockett*, 668 F.Supp. 1155, 1159 (N.D.Ill. 1987)). *Erdman* governs the case at bar.

### B.

The City's second argument, that due to mistake the judgment should be vacated under Rule 60(b), fails as well.[11]

---

8. In any event, given the dispute as to whether or not the settlement even existed and given the dispute as to a material term of any such settlement, the *Callie* court remanded the case for an evidentiary hearing to determine the proper resolution of those disputes. Thus, *Callie* is even less helpful. The City does not want an evidentiary hearing, rather, it seeks vacation of the judgment. *Callie* does not support vacating the judgment.

9. Again, whether such references, in fact, entitle the City to an appeal is a question for the Ninth Circuit.

10. The offer simply leaves each party open to the possibility that its evaluation of whether an appeal lies will be mistaken.

11. As a preliminary issue, the Court notes that this argument is undercut by the City's claim that it both can and does intend to appeal from the judgment. The City argues generally that it intends to appeal the offer of judgment, and that it *can do so*. Mem. of P. & A. in Supp. of Mot., filed Jan. 9, 1992, at 6–9. Obviously, whether the cases the City relies on do or do not support its position is a question for the Ninth Circuit and not for this Court. If that is the City's true position, however, then either there is no mistake, or at worst, only plaintiff is mistaken.

In arguing that the judgment be vacated under Rule 60(b)(1), the City relies principally upon *Rodgers v. Watt*, 722 F.2d 456 (9th Cir.1983), and *Whitaker v. Associated Credit Services, Inc.*, 946 F.2d 1222 (6th Cir.1991).[12] The City relies on *Rodgers* for the proposition that " 'the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems.' " *Rodgers*, 722 F.2d at 459 (quoting *Staren v. American Nat'l Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263 (7th Cir.1976)). Although that quotation is accurate, *Rodgers* also explains that "there is a compelling interest in the finality of judgments which should not lightly be disregarded." *Id.* There has been a resolution of the central issues of this case on the merits after vigorous and thorough briefing. Pursuant to such resolution, a final judgment has been entered in accordance with the agreement of the parties. Thus, *Rodgers* does not support the City's argument.

*Whitaker* involved a mistake in transcription of the dollar amount of a judgment. A Rule 68 offer of judgment was made and accepted providing for damages of $500,000 where $500 was intended. *Whitaker* distinguished *Brown v. County of Genesee*, 872 F.2d 169 (6th Cir.1989), and *Mallory v. Eyrich*, 922 F.2d 1273 (6th Cir. 1991), both of which espoused the Sixth Circuit rule that *mistake must be mutual* for Rule 60(b) to provide relief. *Id.* at 1280. In distinguishing *Brown* and *Mallory*, the *Whitaker* court emphasized that "the mistake was simply a typographical error. To mechanically label the typographical error as a unilateral mistake of

the kind in *Brown* would be to ignore justice in favor of pure terminology." 946 F.2d at 1225. The Sixth Circuit explained that the district court did not abuse its discretion in vacating that judgment because "this mistake is just too big to ignore." *Id.* at 1225. In addition, *plaintiff's* attorney viewed the offer as "outrageous" and was "shocked" to receive it. *Id.*

The City now fears that the ultimate legal result of its having made this offer, silent on appeal rights, may be different than it had anticipated. It asks this Court to vacate that judgment. None of the facts relied on by the *Whitaker* court in distinguishing *Brown* and *Mallory*, however, are present here. In this case, the Rule 68 offer contained no typographical error.[13] In addition, under Sixth Circuit law applied in *Whitaker*, mistake as to the terms of a settlement agreement must be mutual. *Mallory*, 922 F.2d at 1280. Here, even assuming that a mistake as to an issue upon which the contract is entirely silent would justify invocation of Rule 60(b)(1), the mistake could not have been mutual. Either an appeal lies or it does not. In either event, only one party will be mistaken as to that issue.

Most important, the "mistake" in *Whitaker* was on the face of the settlement offer and was a material term of that offer. Here, the mistake, if any there was, concerns the legal effect of the agreement regarding an issue upon which the offer is silent. The mistake does not concern *the terms* of the agreement itself. Although both parties were concerned with appeal rights in the settlement negotiations, the City failed to mention that issue in the Rule 68 offer.[14] Appeal rights are simply not

---

**12.** Both parties agree that motions under Rule 60(b) are addressed to the sound discretion of the trial judge. *Thompson v. Housing Authority of Los Angeles*, 782 F.2d 829, 832 (9th Cir.), *cert. denied*, 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986). The City argues that Rule 60(b) should be applied liberally, and Blair argues that Rule 60(b) requires a showing of exceptional circumstances to alter a judgment. These arguments are irrelevant. The question before this Court is whether a mistake was made that warrants a modification under Rule 60(b)(1).

**13.** Indeed, a mistake of the type contemplated by *Whitaker* was corrected by the Court when the word "dismissing" was substituted for "denying" with the parties' agreement.

**14.** The City also cites to *Waggoner v. R. McGray, Inc.*, 743 F.2d 643, 645 (9th Cir.1984), for the proposition that "[m]istake of counsel induced by error of law is covered by Rule 60(b)(1) . . . ." Although this quotation is accurate, it was irrelevant to the disposition of that case. That case hardly supports the general rule the City claims it represents.

terms of the offer; there is no mistake as to appeal rights in the offer. Moreover, even assuming that the Rule 68 offer's silence on appeal issues rises to an "ambiguity," it is well established that in settlement offers "ambiguities are construed against the drafter." *Erdman,* 926 F.2d at 880.

In "murky" areas of the law, the parties properly bear the risk of entering into agreements that are silent on crucial issues. Imagine a contrary rule: A Rule 68 offer, duly accepted, may be vacated at the offeror's whim when the offeror's research reveals that the probable legal result of a judgment entered pursuant to that offer, concerning an issue *upon which the offer was silent,* is unfavorable. Such a policy would be absurd.

### C.

■ The final argument presented by the City is that for various reasons equity requires that the Court exercise its discretion to vacate the judgment. The City asks that its right to appeal the important constitutional issues raised by this case not be foreclosed due to a technical oversight. This is the City's strongest argument. It is not clear, however, that the City deserves the equitable treatment it seeks. The settlement history demonstrates that the City never responded to Blair's offer. Instead, for tactical reasons, the City presented its Rule 68 offer of judgment. This offer contained sharply different terms and was silent as to appeal.

Further, the Rule 68 offer is not a neutral settlement offer in furtherance of open negotiations. Rather, such an offer "presents a more draconian choice to the plaintiff," in that should the plaintiff refuse the offer and ultimately receive a less favorable judgment, the plaintiff must bear all of its and the defendant's costs incurred after the offer was made. *Said v. Virginia Commonwealth University/Medical College,* 130 F.R.D. 60, 63 (E.D.Va.1990). A Rule 68 offer forces the plaintiff to

"think very hard" and settle or face the prospect of incurring great costs. *Marek v. Chesney,* 473 U.S. 1, 11, 105 S.Ct. 3012, 3017, 87 L.Ed.2d 1 (1985). The offer was made intending to force Blair's hand. The City cannot now complain because it was successful in its efforts.

Rule 68 is a powerful tool. It can be used by defendants to make an offer which, if refused, may be used against the plaintiff later. This Court should not add to that power by allowing an offer that had been accepted to be revised to reflect post-acceptance changes in the offeror's legal analysis concerning an issue upon which the offer was silent. Objectively, the offer is silent as to rights of appeal. It is not the role of the Court to abrogate contracts entered into by parties pursuant to Rule 68 when the offeror deems the contract inexpedient or unwise. It is well established that, in settlement offers, "ambiguities are construed against the drafter." *Erdman,* at 880.[15]

The City also argues that it should not lose its right to appeal due to mistake of counsel and that it never authorized a settlement that would not preserve its right to appeal. The City argues that the Ninth Circuit is unwilling "to deprive a party of its right to appeal because of mistakes of counsel." City's Br. at 14 at 22, 11. 27–28—23, 1.1. For this proposition the City relies on *Williams v. Boeing Co.,* 681 F.2d 615, 616 (9th Cir.1982), and *Seidman v. Beverly Hills,* 785 F.2d 1447 (9th Cir.1986). *Williams,* however, involved the reinstatement of a party's mistaken voluntary dismissal of an appeal of a Rule 54(b) judgment. The court stated that "[w]e do not condone the lack of understanding of appellate procedure demonstrated by appellant's counsel, but we see no reason to let counsel's failure *in this case* work to his client's detriment." 681 F.2d at 616 (emphasis added). *Williams* is entirely distinguishable from the facts at bar. Here, counsel's failure, if any there be, should work to the City's detriment; this case involves a Rule

---

**15.** Nor is it the role of this Court to presume that the judgment is not appealable and thereby offer a prospective judgment as to the legal

result of the contract entered into by the litigants.

68 offer of judgment knowingly entered into by the parties. Indeed, the City frequently uses a Rule 68 offer to limits its costs in litigation. Decl. of Louis Giraudo, filed Jan. 9, 1992, at 2. The legal risks of such a strategy are to be borne by the parties. Moreover, the *Williams* case involved a mistaken dismissal. An inadvertent dismissal is vastly different from an accepted Rule 68 offer that is silent as to appeal.

Nor is the *Seidman* case helpful to the City. In a footnote, the *Seidman* court noted that the "dismissal of this appeal is without prejudice to Seidman's seeking relief before the district court from the judgment of voluntary dismissal with prejudice for reasons of 'mistake, inadvertence, surprise, or excusable neglect' under Federal Rule of Civil Procedure 60(b)(1)." 785 F.2d at 1448 n. 3. This footnote does not give the Court guidance. Seeking modification under Rule 60(b) is, of course, a party's right. Here, however, we deal with whether or not such a motion should be granted. This Court's grant of such a motion must be in conformance with the law.

In addition, the City argues that it would never have authorized approval of a settlement that did not provide for an appeal of the constitutional issues raised by the Opinion. The offer, however, was formally authorized by the City. Riley had real and apparent authority to submit the Rule 68 offer and enter into the judgment. Decl. of George A. Riley, filed Jan. 9, 1992, at 6; Decl. of Pius Lee, filed Jan. 9, 1992, at 2; Decl. of Edward Campana, filed Jan. 9, 1992, at 2. The City's reliance on *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143 (9th Cir.1977), is misplaced. In that case, the court noted that, "[i]f the record had shown that the plaintiffs had agreed to the settlement, or that the attorneys had authority to settle the suit and dismiss the

action, the district court would then have acted well within its discretion in denying the [60(b)] motion." *Id.* at 1144. Here, the City agreed to propose the offer and its attorney had the authority to present the offer. The City's sole grounds to argue that Riley did not have authority to submit the offer is that the City now hopes for a more favorable result than that for which it bargained. This argument cannot be accepted.

Finally, the City argues that refusing to modify the judgment will create uncertainty in the law.[16] This argument is specious. The declaration of unconstitutionality stands as law. The City claims this situation creates uncertainty because "[t]o obtain an appellate review of this Court's ruling, the official must 'flout' this Court's declaration by initiating an arrest or prosecution under § 647(c)." City's Reply Br. at 22–23. The City argues that officials should not have to incur this risk. Likewise, the City argues that would-be beggars face the risk of erratic enforcement of the statute. The short answer to this argument is that § 647(c) is unconstitutional.[17] While the Ninth Circuit might reverse that judgment, no Ninth Circuit decision is presently necessary to clarify issues for the City or would-be beggars. Any attempt to enforce that statute would flout this Court's order. Beggars may solicit alms without fear of punishment under that statute. As it stands, there is no uncertainty. If no appeal lies from the judgment, the City has lost the case on that issue. If an appeal lies, the Ninth Circuit will determine the constitutionality of § 647(c).

### III.

■ The State has intervened in this case pursuant to 28 U.S.C. § 2403(b). The State also moves to vacate the judgment

---

**16.** Again, contrary to its assertions that the judgment can be appealed, this argument presumes that absent modification, the judgment may not be appealed.

**17.** A longer answer is that the City mistakenly presumes that, where a party hopes to appeal, no determination by a district court is final unless reviewed by an appellate court. Appeal,

however, is not an inalienable right. A party is entitled to appeal only in accordance with the law, the Federal Rules of Civil Procedure, and the Federal Rules of Appellate Procedure. If a judgment is entered from which no appeal lies under the law and the relevant procedural rules, no uncertainty is created. Rather, such a case is concluded, and the judgment stands as law.

entered pursuant to the City's Rule 68 offer of judgment.

The State argues that intervenors under 28 U.S.C. § 2403(b) intervene with "all the rights of a party." Because the State intended to appeal the determination that § 647(c) was facially unconstitutional, it argues that it should be guaranteed that right as a party. The State does not have standing to assert that right.

### A.

A threshold question to this argument is whether or not the State has standing to pursue this motion. Section 2403(b) provides in pertinent part that:

> In any action, suit or proceeding in a court of the United States to which a State ... is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn into question, the court shall ... permit the State to intervene for presentation of evidence ... and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs *to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.*

28 U.S.C. § 2403(b) (emphasis added). Thus, the State has all the rights of a party to the extent necessary for presentation of the facts and law concerning *the constitutionality of § 647(c).* This Court has had a proper and extensive presentation of the facts and law concerning the constitutionality of § 647(c). As a result of that presentation, in which the State's assistance was substantial, the Opinion issued. The motion currently before the Court has no bearing on the constitutionality of § 647(c). The motion's relevance goes solely to the terms of the judgment entered pursuant to the Rule 68 offer of judgment. This is not a question concerning the constitutionality of the statute, nor does this issue involve § 647(c). In short, under the terms of the statute through which the State intervened, the State has no standing to either join

with the City's motion or present its own motion for vacation of the judgment.

There are few cases discussing this issue. Several cases, however, indicate that the State should not be deemed to have standing to pursue this motion. In *Vietnamese Fishermen's Association v. Knights of the Ku Klux Klan,* 543 F.Supp. 198, 215 n. 17 (S.D.Tex.1982), a district court explained that, "[g]iven the affirmative relief requested by the State of Texas [an injunction against defendants], intervention under § 2403(b) is inapplicable...." Here, too, the State seeks affirmative relief in vacation of the judgment entered by the actual parties. In *Ruotolo v. Ruotolo,* 572 F.2d 336, 339 (1st Cir.1978), the First Circuit explained that there is a difference

> between permitting the United States to play an active role during the pendency of private litigation, and permitting it to go forward with the litigation in its own right after the parties have composed their differences. To do the latter, we think the government must possess some independent basis as a party apart from its status as intervenor....

Finally, in *Yniguez v. Arizona,* 939 F.2d 727 (9th Cir.1991), the Ninth Circuit explained that because two parties were appealing an issue, Arizona had the "limited" right to join the appeal under § 2403(b) to "make an argument on the question of constitutionality. Before the [State] can assert any right at all there must be a viable proceeding in which that right may be asserted." *Id.* at 739. Given that the State's limited right is to make an argument concerning constitutionality, and that there must be a viable proceeding in which the State can assert that limited right, *Yniguez* strongly indicates that the State has no standing to move for vacation of the judgment entered by the actual parties. The proceeding currently before this Court has nothing to do with the constitutionality of § 647(c). Any argument from the State concerning Rule 60(b) is vastly beyond the scope of its "limited" right to address the constitutionality of § 647(c).

 

Against the words of the statute, the strong implications of case law, and without citation, the State argues that "a State must be given an opportunity to intervene as a party for the purpose of litigating the constitutionality of the statute. This means that the State must have the right to seek vacation of an order that arguably could imperil the right of the State to seek an appeal...." State's Reply Br., filed Jan. 24, 1992, at 6. The State's position is that without the right to pursue every procedural exercise that may impact on an ultimate determination of constitutionality, the State is limited in its ability to present evidence as to constitutionality. The question presented by this argument is: How far removed from an actual proceeding determining the constitutionality of a statute, would an intervenor continue to have standing? Under the State's proposal an intervenor could unilaterally move a court to vacate a judgment properly presented and accepted by the parties. The State in such a scenario becomes much more than a party. It becomes a super party who could trump the agreement of the actual parties.

If Congress had intended such a result, it would have provided an intervenor standing under § 2403(b) to litigate *every issue* in a case involving the constitutionality of a state statute. Congress did not so provide. It specifically limited the standing of a state to "presentation of facts and law relating to the question of constitutionality." 28 U.S.C. § 2403(b). The Court finds that the State has no standing to present argument on the Rule 60(b) motion before this Court.

## IV.

Accordingly,

IT IS HEREBY ORDERED that:

1. The motion of the City and County of San Francisco to modify or vacate the judgment entered on January 2, 1992, in this case is DENIED.

2. The Judgment entered on January 2, 1992, pursuant to the unconditionally accepted Rule 68 offer of judgment, stands as entered.

3. The State of California, as intervenor, has no standing to argue this Rule 60(b) motion.