# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SUSAN KAY MCCLAIN, | No. 54219-6-II |
| Appellant, | |
| v. | |
| MICHAEL FRANCIS LAVERGNE II, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, J. – Susan Kay McClain appeals the superior court's order granting her former husband Michael Francis LaVergne II's CR 60(b)(1) motion to vacate a military retired pay division order (pay order) due to LaVergne's unilateral mistake or inadvertence. We hold that (1) this appeal is timely, (2) the record supports the superior court's conclusion that LaVergne had mistakenly signed the pay order, (3) the record does not support the superior court's conclusion that LaVergne inadvertently signed the pay order, and (4) McClain fails to show that the superior court erred by relying on LaVergne's unilateral mistake as grounds to vacate the pay order. Accordingly, we affirm the order vacating the pay order on the grounds of unilateral mistake. Additionally, we conclude that McClain's appeal was not frivolous and deny LaVergne's attorney fees request under RAP 18.9.

FACTS

I. ALABAMA DIVORCE DECREE AND DISSOLUTION AGREEMENT

In 2004, after 14 years of marriage, McClain and LaVergne divorced in Alabama. The final divorce decree incorporated the parties' "Marriage Dissolution Agreement" (Agreement). The Agreement addressed, among other matters, the division of the parties' property, including any retirement.

The portion of the Agreement addressing the division of LaVergne's military retirement stated, "Husband stipulates that Wife is entitled to a portion of the retirement under the laws of the State of Alabama." Clerk's Papers (CP) at 50. The Agreement did not cite to any specific Alabama law, set out the requirements of those laws, or set out any formula from which to calculate McClain's share of LaVergne's military retirement.

II. SEPTEMBER 21, 2017 MILITARY RETIRED PAY DIVISION ORDER

LaVergne retired from the military in July 2017, after 28 years of service; 14 years of which were during the marriage. McClain subsequently applied to the Defense Finance and Accounting Service (DFAS) for payment of her portion of LaVergne's military retirement under the Agreement.

The DFAS notified McClain that it could not approve her application because the Agreement's reference to "the Laws of Alabama" was not specific enough to allow the DFAS to calculate McClain's share of LaVergne's military retirement pay. *Id.* at 79. The DFAS's letter stated,

> The court order submitted awards you retirement base on the Laws of Alabama, which figure is not readily apparent and cannot be calculated by this agency. Please be advised that military retirement is a statutory entitlement that has no accrued value prior to the member's retirement. *Therefore, you must provide*

*this agency a certified copy of an amended or clarifying court order that provides for payment as a fixed amount or payment as a percentage of the member's actual disposable military retired/retainer pay.* Payment may also be expressed as a formula if the only missing element is the member's total creditable years of service (denominator).

*Id.* (emphasis added).[1]

In response to the DFAS's letter, McClain[2] drafted a pay order and obtained LaVergne's signature on the document.[3] The next day, September 21, 2017, McClain presented the pay order to the court on the ex parte calendar, and a Pierce County commissioner entered the pay order ex parte.

The pay order that McClain filed provided in part: "The service member, Michael LaVergne II[,] has hereby agreed to give his former spouse, Susan McClain[,] 50 [percent] of his disposable military retirement pay, as they were married more than 10 years and required by the parties' divorce decree." *Id.* at 183. This pay order thus awarded McClain 50 percent of LaVergne's *total* military retirement pay, not 50 percent of the *marital portion* of LaVergne's military retirement pay.

In October 2017, the DFAS notified LaVergne that McClain had applied to receive "50 [percent] of [his] retired/retainer pay." *Id.* at 154. The DFAS advised LaVergne that if he did not

---

[1] If a formula had been used in this instance, it would have been: 0.5 x 14/[total years of service]. Given LaVergne served 28 years and the duration of the marriage was 14 years, the fixed percentage would have been calculated at .25, or 25 percent, of LaVergne's total disposable retirement pay, the equivalent of 50 percent of the martial portion of the retirement pay.

[2] McClain prepared this document with the assistance of her then-husband Paul Dunn.

[3] LaVergne has disputed signing the pay order that McClain filed. But because the superior court's order granting LaVergne's CR 60 motion was not based on fraud, we assume for purposes of this opinion that LaVergne signed the pay order that McClain filed.

notify the DFAS within 30 days that the order had been amended, superseded, or set aside, the DFAS would "honor" McClain's application and issue the first payment on January 1, 2018. *Id.* LaVergne did not contact the DFAS, and McClain's payments began on January 1, 2018.

### III. MCCLAIN'S MOTION TO ENFORCE

In April 2018, McClain moved to enforce the pay order, arguing that she had not received payment for her share of LaVergne's military retirement from the date of his retirement to January 1. LaVergne responded that under the Agreement and Alabama law, McClain was entitled to only 25 percent of his total disposable retirement income (half of the marital portion of LaVergne's disposable retirement income); that the pay order was entered without any notice to him; and that his signature on the pay order was forged.

In June, a commissioner denied McClain's motion to enforce due to an inadequate record.

### IV. LAVERGNE'S CR 60 MOTION TO VACATE

Three months later, LaVergne moved to vacate the pay order under CR 60(b) based on mistake and irregularity in obtaining the judgment, newly discovered evidence, fraud, and "other reasons" justifying relief. *Id.* at 116. In his briefing and supporting declaration, LaVergne asserted that (1) he had agreed to sign a pay order giving McClain the portion of his military retirement allowed under the Alabama order, which required only that his military retirement to be divided

as required under Alabama law;[4] (2) the pay order he had signed did not "appear[ ] to change" the Alabama order; and (3) when he signed the order he believed he was giving McClain 50 percent of the *martial* portion of his retirement pay, not 50 percent of his *total* disposable retirement pay.[5] *Id.* at 110. LaVergne further asserted that the pay order McClain entered did not comply with Alabama law.

In her response and supporting declaration, McClain asserted that LaVergne was "not telling the truth about what [they] knew or discussed about the wording in [their] . . . Agreement." *Id.* at 133. She claimed that she "never knew exactly what [the Agreement] meant" and that she understood only that she "was entitled to a portion of [LaVergne's] retirement," but not the exact

---

[4] LaVergne and McClain agree that former Alabama Code section 30-2-51(b) (1995) applied. This statute provided:

> The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
> (1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
> (2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
> (3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court.

Former ALA. CODE § 30-2-51(b) (1995). The parties do not dispute that this statute applies to the Agreement. Although the statute only sets a cap on the amount of retirement that can be awarded, the parties do not dispute that under this statute McClain was entitled to 25 percent, not 50 percent, of LaVergne's total disposable military retirement pay, which represents 50 percent of the martial portion of the retirement pay.

[5] Additionally, LaVergne asserted that he was not notified when McClain entered the order and that the commissioner would not have entered the pay order without ensuring that LaVergne had notice and an opportunity to appear if the commissioner had known that the order materially changed the parties' Agreement or the Alabama divorce decree.

amount. *Id.* McClain also asserted that she and LaVergne "did not have any discussions after the divorce about [the Agreement] limiting [her] to receiving half (1/2) of his just over 14 years of service" and that the pay order did not change the terms of the Agreement. *Id.*

McClain further asserted that LaVergne was lying about not knowing what was in the signed pay order, claiming that she had texted him the proposed order and that he reviewed the order before he signed it. She supported this assertion with copies of text messages dated a week before LaVergne signed the pay order that contained the same language that was in the signed pay order. McClain further noted that despite the DFAS notifying LaVergne that she would be receiving 50 percent of his total disposable retirement pay, rather than 50 percent of the martial portion of his total disposable retirement pay,[6] LaVergne did not object to this allocation until after she filed her motion to enforce.

At the motion hearing,[7] the superior court focused on what each of the parties meant when they agreed to the following provision in the pay order, "The former spouse is awarded 50 percent of the member's disposable military retirement pay." Verbatim Report of Proceedings (VRP) (Nov. 16, 2018) at 3. LaVergne's counsel claimed that LaVergne's intent was to provide McClain with 50 percent of the community or martial portion of his military pay and that LaVergne "did not see that it was the total 50 percent of his [total] disposable retirement" when he signed the pay order. *Id.* at 5.

---

[6] Again, given the length of the marriage (14 years) and LaVergne's length of service (28 years), this would be 25 percent of the total disposable retirement pay.

[7] At this hearing, the superior court considered the parties' briefing and supporting declarations and counsels' argument; neither party presented any testimony.

McClain's counsel admitted that if the commissioner had been asked to interpret the Agreement under Alabama law, the commissioner would have determined that McClain was entitled to only 25 percent of LaVergne's total retirement pay (the equivalent of 50 percent of the marital portion of LaVergne's retirement pay).[8] But McClain's counsel argued that the issue was, instead, what the parties agreed to when they signed the pay order, rather than the Agreement, and he asserted that the parties could agree to anything that did not violate public policy.

The superior court asked McClain's counsel if, assuming no fraud or alteration of the pay order, there was a question about what the parties actually agreed to when they signed the pay order. McClain's counsel responded that there was no mistake, that the pay order's language was unambiguous, and that LaVergne knew the pay order awarded McClain more than what she was entitled to under Alabama law when he signed the order. McClain's counsel further asserted that if it was clear to everyone that McClain would only get 25 percent of LaVergne's total retirement, then that should have been stated in the Alabama paperwork, but it was not. McClain's counsel also asserted that LaVergne's failure to challenge the pay order after the DFAS advised him that McClain had applied for 50 percent of the total retirement proved that LaVergne knew what he had agreed to in the pay order.

LaVergne's counsel responded that it would not make sense for LaVergne to give away what amounted to approximately $11,000 more a year than was required under the Agreement. LaVergne's counsel also asserted that the Agreement or the Alabama decree could not have fully

---

[8] We note that although McClain's counsel repeatedly referred to "25 percent of the *marital portion*" of the retirement pay, he clearly intended to refer to 25 percent of the *total* retirement pay. *See* VRP (Nov. 16, 2018) at 6, 8-9, 14 (emphasis added).

addressed what percentage of the *total* retirement McClain would receive because there was no way of knowing how long he would continue to serve in the military.

The superior court concluded that the lack of specificity in the Agreement was likely due to the fact that LaVergne's length of service was not yet known. The court then stated that the Alabama statute allowed McClain to receive up to 50 percent of the retirement accrued to the date of the divorce (50 percent of the marital portion of the total retirement). McClain's counsel agreed that this was a correct interpretation of the statute.

The superior court then granted LaVergne's motion to vacate the pay order based on LaVergne's mistake and inadvertence, noting that LaVergne did not "underst[an]d what he was signing."[9] *Id.* at 18. On November 16, 2018, the superior court issued an order granting LaVergne's motion to vacate the pay order based on "LaVergne's (1) mistake, and (2) inadvertence." CP at 204. The court also ordered that the parties set "an evidentiary hearing for the purpose of determining the intent of the parties with regards to a [pay order] which will be entered by the court based on findings from [this] hearing."[10] *Id.* at 205.

### V. SUBSEQUENT MOTIONS AND ORDERS AND NOTICE OF APPEAL

McClain subsequently moved to clarify the November 16, 2018 order. On December 14, the superior court vacated the portion of the November 16, 2018 order requiring an evidentiary

---

[9] The superior court stated that it was not vacating based on LaVergne's allegation of fraud. The court commented, "I don't think there is sufficient information before the Court to conclude that there is any fraud; although, I am concerned about Mr. Dunn who is not a practicing attorney having drafted it, and I think that's problematic." VRP (Nov. 16, 2018) at 16.

[10] LaVergne does not challenge the portion of the superior court's order ordering an evidentiary hearing or the superior court's later order directing the parties to enter a new pay order.

hearing and entered an order on the motion to clarify. Rather than require an evidentiary hearing, the superior court ordered the parties to prepare a new pay order.

Nearly a year later, on December 13, 2019, the superior court entered the new pay order. The new pay order stated that McClain would receive 25 percent of LaVergne's total "disposable retired pay." *Id.* at 259.

On January 6, 2020, less than 30 days after the new pay order was filed, McClain filed a notice of appeal seeking review of (1) the December 13, 2019 pay order, (2) the December 14, 2018 order clarifying the November 16, 2018 order, and (3) the November 16, 2018 order granting LaVergne's CR 60 motion to vacate.

ANALYSIS

I. TIMELY APPEAL

As a preliminary matter, we must address LaVergne's argument that the appeal from the November 16, 2018 order vacating the original pay order is untimely because McClain did not file her notice of appeal within 30 days of that decision. We hold that this appeal is timely.

An order granting or denying a CR 60 motion to vacate is a final order that is appealable as of right. RAP 2.2(a)(10). Generally, a notice of appeal must be filed within 30 days after the entry of the decision that the appealing party wants us to review. RAP 5.2(a).

But not all final orders must be appealed within 30 days:

> A party need not file a notice of appeal within 30 days of every appealable order or judgment but may instead await the final decision in the case. If a timely notice of appeal is filed from that decision, the appellate court will review prior orders and judgments, even those which were immediately appealable, if they prejudicially affect the final judgment.

9

*Franz v. Lance*, 119 Wn.2d 780, 781, 836 P.2d 832 (1992) (citing *Fox v. Sunmaster Prods., Inc.*, 115 Wn.2d 498, 505, 798 P.2d 808 (1990)); *see also* RAP 2.2(a)(13). A prior order "'prejudicially affects'" a decision designated in the notice of appeal when the "designated decision would not have occurred in the absence of the undesignated ruling or order." *Gomez v. Sauerwein*, 172 Wn. App. 370, 376-77, 289 P.3d 755 (2012) (citing *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 380, 46 P.3d 789 (2002)), *aff'd*, 180 Wn.2d 610, 331 P.3d 19 (2014).

Here, the December 13, 2019 pay order would not have existed if the superior court had not first issued the November 16, 2018 order vacating the original pay order. Thus, the November 16, 2018 order prejudicially affected the December 13, 2019 order. Because McClain filed her notice of appeal within 30 days of the December 13, 2019 order, and the November 16, 2018 order prejudicially affected the December 13, 2019 order, the appeal of the November 16, 2018 order is timely, and we may reach the merits of the appeal.

## II. CR 60 MOTION

McClain argues that the superior court erred in granting LaVergne's CR 60 motion to vacate the November 16, 2018 pay order because (1) there was no evidence of LaVergne's mistake or inadvertence, and (2) a party's unilateral mistake,[11] without more, is not grounds to vacate as a matter of law. We hold that there was evidence of LaVergne's mistake; that there was no evidence of LaVergne's inadvertence; and that McClain fails to show that the superior court erred by relying on LaVergne's unilateral mistake as grounds to vacate the pay order.

---

[11] McClain also argues that unilateral inadvertence alone is not grounds to vacate the order. Because we hold that there was no evidence of inadvertence, we do not address that argument.

A. LEGAL PRINCIPLES

We review the superior court's decision on a CR 60(b) motion for manifest abuse of discretion. *Haley v. Highland*, 142 Wn.2d 135, 156, 12 P.3d 119 (2000). The court abuses its discretion when its decision is manifestly unreasonable or made on untenable grounds or for untenable reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). A court abuses its discretion when it bases its decision on an erroneous view of the law. *Id.*

Unlike an appeal, a CR 60(b) motion is not a means of correcting errors of law. *In re Marriage of Tang*, 57 Wn. App. 648, 654, 789 P.2d 118, 122 (1990). Accordingly, when a party appeals the superior court's CR 60(b) decision, we review only the superior court's decision to deny the motion, not the underlying order that the party seeks to vacate. *Bjurstrom v. Campbell*, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980).

B. LACK OF EVIDENCE OF MISTAKE OR INADVERTENCE

McClain argues that the superior court erred in granting LaVergne's CR 60 motion because there was no evidence of LaVergne's mistake or inadvertence. We disagree with McClain's assertion that there was no evidence of LaVergne's mistake, but we agree that there was no evidence of his inadvertence.

1. EVIDENCE OF LAVERGNE'S MISTAKE

A "mistake" is "[a]n error, misconception, or misunderstanding; an erroneous belief." BLACK'S LAW DICTIONARY 1199 (11th ed. 2019). "An erroneous belief as to the contents or effect of a writing that expresses the agreement is . . . a mistake." *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 151 cmt. a (1979)).

In his declaration and motion to vacate, LaVergne asserted that (1) he had agreed to sign a pay order giving McClain the portion of his military retirement allowed under Alabama law as required under the Agreement, (2) the pay order he signed did not appear to differ from the terms of the Agreement, and (3) when he signed the pay order he believed he was giving McClean 50 percent of the martial portion of his retirement pay, not 50 percent of his total retirement pay. These facts support the conclusion that LaVergne had an erroneous belief as to the contents or effect of the pay order when he signed it and, thus, that he was mistaken about what he signed.

McClain asserts that LaVergne's declaration and argument cannot establish mistake because, based on his claim of fraud, LaVergne cannot now claim to have mistakenly signed the pay order that McClain filed. But the superior court rejected LaVergne's fraud claim. Thus, we must assume that LaVergne's statements regarding the pay order he signed pertain to his understanding of the pay order McClain filed. As stated above, the facts in LaVergne's declaration and motion support the superior court's conclusion that LaVergne's approval of the pay order was a mistake.

2. NO EVIDENCE OF LAVERGNE'S INADVERTENCE

McClain is, however, correct that the facts do not support the superior court's conclusion that LaVergne established inadvertence.

"Inadvertence" is "[a]n accidental oversight; a result of carelessness." *Id.* at 908. Nothing in LaVergne's declaration or motion suggests that he signed the pay order based on any accidental oversight or carelessness. In fact, LaVergne did not argue or claim that he inadvertently signed the pay order. Instead, as discussed above, LaVergne asserted that he did not understand that the pay order differed from the Agreement.

12

While LaVergne's declaration and briefing support a finding of mistake, they do not support a finding of inadvertence. Because there was no basis upon which the superior court could have concluded that LaVergne had inadvertently signed the pay order, the court erred to the extent it granted the motion to vacate based on LaVergne's inadvertence.

C. UNILATERAL MISTAKE

McClain further argues that the superior court erred as a matter of law in vacating the pay order based on LaVergne's "unilateral mistake." Br. of Appellant at 11. Relying on *Haller v. Wallis*, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978), *Gill v. Waggoner*, 65 Wn. App. 272, 276, 828 P.2d 55 (1992), and *Lietz v. Hansen Law Offices, PSC*, 166 Wn. App. 571, 579, 271 P.3d 899 (2012), McClain contends that the pay order is a contractual agreement to which contract principles apply and therefore a party's unilateral mistake cannot be grounds to vacate an "agreed order" absent fraud, deceit, or coercion or the application of the "'snap-up doctrine.'"[12] Br. of Appellant at 12. This argument fails because the pay order is a memorialization of the existing agreement, not a contractual agreement between the parties, and McClain cites no authority establishing that unilateral mistake cannot support a CR 60 motion challenging a memorialization of an agreement.

Citing *Haller*, McClain first asserts that the pay order is "[a]n agreed . . . order" that is the equivalent of a contract, so *Gill* and *Lietz* are applicable by analogy. Br. of Appellant at 11. But

---

[12] "Under the so-called 'snap up' doctrine, a court may decide not to enforce a contract where a party made a unilateral mistake in entering the contract and the other party knew of the other party's mistake at the time of acceptance and unfairly exploited the mistaken party's error." *Lietz*, 166 Wn. App. at 579 n.10.

McClain fails to demonstrate that contract principles apply to the pay order.[13] A pay order is more similar to a qualified domestic relations order (QDRO), in that it is intended to enforce or facilitate the acquisition of a right or interest awarded under the divorce decree, not to establish the parties' rights in the first instance. *See Gainous v. Gainous*, 219 S.W.3d 97, 107 (Tex. App. 2006) ("A QDRO is a species of post-divorce enforcement or clarification order.")

And because the pay order is not a contractual agreement between parties, McClain's reliance on *Gill* and *Lietz* is not persuasive. *Gill* addressed a summary judgment order related to a settlement agreement between an injured party and an insurance company. 65 Wn. App. at 275-76. *Lietz* addressed a trial court's refusal to enter CR 68 offer of judgment. 166 Wn. App. at 575. While both cases discuss unilateral mistake, they do so in the context of evaluating the terms of the agreements themselves, not, as is the case here, the memorialization of those agreements.

Here, the superior court vacated the pay order based on LaVergne's mistaken understanding that he was signing a pay order that accurately memorialized the terms of the Agreement, which was incorporated into the divorce decree. Although a court may not be able to grant a CR 60 motion vacating a contract or agreed-to judgment based solely on a party's unilateral

---

[13] We note that McClain fails to discuss, let alone establish, that the pay order was a lawful modification of the Agreement, which would result in the modification of the divorce decree. We note that the Agreement required that any modification of the Agreement had to be "made in writing and executed with the same formality as this agreement, and approved by the court if such approval is required." CP at 49. The entry of an ex parte pay order would not satisfy this provision, so any attempt to modify the Agreement through the ex parte pay order would not be valid.

14

mistake,[14] that limitation is based on restrictions imposed by contract law. And McClain does not cite any authority establishing that a party's unilateral mistake regarding whether an order correctly *memorializes* an existing, unchallenged agreement[15] is insufficient to establish mistake for purposes of CR 60(b)(1). Thus, McClain does not show that the superior court abused its discretion in granting the motion to vacate the pay order based on LaVergne's unilateral mistake.

### III. ATTORNEY FEES REQUEST

LaVergne requests costs and attorney fees under RAP 18.9 based on McClain filing a frivolous appeal. "An appeal is frivolous when there are no debatable issues over which reasonable minds could differ and there is so little merit that the chance of reversal is slim." *Kearney v. Kearney*, 95 Wn. App. 405, 416, 974 P.2d 872 (1999). McClain's claims include one issue upon which she is entitled to relief, so this appeal is not frivolous. Accordingly, we deny LaVergne's request for costs and attorney fees under RAP 18.9.

### CONCLUSION

We affirm the order vacating the pay order on the grounds of unilateral mistake. Additionally, we conclude that McClain's appeal was not frivolous and deny LaVergne's attorney fees request under RAP 18.9.

---

[14] *See* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2858, at 341 (3d ed. 2012) ("[J]udgments entered as a result of settlements may be reopened when fraud or mutual mistake is shown." (citing *Brown v. County of* Genesee, 872 F.2d 169 (6th Cir. 1989) (motion to modify settlement agreement); *Blair v. Shanahan*, 795 F. Supp. 309 (N.D. Cal 1992) (challenging underlying settlement agreement), *aff'd*, 38 F.3d 1514 (9th Cir. 1994))).

[15] We note that the parties do not dispute that the divorce decree allowed McClain to receive 50 percent of the marital share of LaVergne's retirement, not 50 percent of his total retirement.

No. 54219-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, P.J.

VELJACIC, J.

16