38 F.3d 1514
 Celestus BLAIR, Jr., Plaintiff-Appellee,
v.
Steven SHANAHAN; James Lassus; Stephen Paulson; Frank
Jordon; City of San Francisco, Defendants-Appellants,
and
People of the State of California, Intervenor.
Celestus BLAIR, Jr., Plaintiff-Appellee,
v.
PEOPLE OF the STATE of California, Intervenor-Appellant,
and
Steven Shanahan; James Lassus; Stephen Paulson; Frank
Jordon; City of San Francisco, Defendants.
Celestus BLAIR, Jr., Plaintiff-Appellant-Cross-Appellee,
v.
Steven SHANAHAN; James Lassus; Stephen Paulson; Frank
Jordon; City of San Francisco,
Defendants-Appellees-Cross-Appellants,
and
People of the State of California,
Intervenor-Appellee-Cross-Appellant.
 Nos. 92-15447, 92-15450 and 92-15451.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 16, 1993.
Submission Deferred July 14, 1994.
Resubmitted Sept. 27, 1994.
Decided Oct. 31, 1994.
 
 G. Scott Emblidge, Deputy City Atty., San Francisco, CA, for defendants-appellants, cross-appellees.
 Michael C. Hallerud, Pettit & Martin, San Francisco, CA, for plaintiff-appellee, cross-appellant.
 Enid A. Camps, Deputy Atty. Gen., San Francisco, CA, for intervenor-appellee, cross-appellant.
 Kent S. Scheidegger, Sacramento, CA, for amicus.
 Appeals from the United States District Court for the Northern District of California.
 Before WALLACE, Chief Judge, GARTH* and WIGGINS, Circuit Judges.
 Opinion by Chief Judge WALLACE.
 Dissent by Judge GARTH.
 WALLACE, Chief Judge:
 
 
 1
 The City and County of San Francisco (City) and intervenor State of California (State) request us to review a decision of the district court, Blair v. Shanahan, 775 F.Supp. 1315 (N.D.Cal.1991) (Blair I), declaring facially unconstitutional under the First and Fourteenth Amendments a state statute criminalizing aggressive panhandling. Cal.Penal Code Sec. 647(c). That statute provides that anyone "[w]ho accosts other persons in any public place or in any place open to the public for the purpose of begging or soliciting alms" is guilty of a misdemeanor. Id. After he was arrested several times for alleged violations of section 647(c), Blair brought this action, and damages were agreed upon in a subsequent settlement. He now argues that we should dismiss the appeal from the district court's declaratory judgment for lack of jurisdiction.
 
 
 2
 The City also asks us to review the district court's order refusing to vacate a consent judgment entered pursuant to Federal Rule of Civil Procedure 68, which settles Blair's claim for damages against the City for a sum of $4,000. Because we hold that the district court did not abuse its discretion in denying the motion to vacate, the consent judgment remains in force.
 
 
 3
 Blair cross-appeals, contending that the district judge inappropriately refused him damages because section 647(c), violates the California Constitution. In addition, the State and City appeal from the refusal of the district court to allow a Rule 54(b) interlocutory appeal of its ruling that section 647(c) was unconstitutional.
 
 
 4
 The district court had jurisdiction pursuant to 28 U.S.C. Secs. 2201, 2202, 1331, 1343, and 1367(a). Our jurisdiction over this timely appeal is suggested under 28 U.S.C. Sec. 1291. We affirm, except for the attempted review of the determination that section 647(c) was unconstitutional. As to that issue, we dismiss as moot and remand to the district court to consider whether its unconstitutionality determination should be vacated.I
 
 
 5
 Blair was arrested at least five times for allegedly begging in violation of California Penal Code Sec. 647(c), but was never charged. He sued pursuant to 42 U.S.C. Sec. 1983, seeking compensatory and punitive damages from the City, individual police officers and the Chief of Police. Among his complaints were that the defendants violated his First, Fourth, and Fourteenth Amendment rights. Blair also sought a declaration that section 647(c) is unconstitutional under the First and Fourteenth Amendments and a permanent injunction against its further enforcement.
 
 
 6
 At the time that he sued, Blair was no longer engaged in begging and had found steady employment. The City argued that because Blair no longer begged, he no longer had a personal stake in the outcome of the equitable claims, so that the district court lacked Article III jurisdiction to decide them.
 
 
 7
 The parties filed cross-motions for summary judgment. The district court held that it had equitable jurisdiction as well as jurisdiction over the claims for damages. The court reasoned that under our precedents, the presence of claims for damages which rely on facts and legal conclusions identical to those present in an equitable claim, creates a personal stake in the equitable claim which satisfies Article III requirements. Blair I, 775 F.Supp. at 1319, citing Giles v. Ackerman, 746 F.2d 614 (9th Cir.1984) (Giles), cert. denied, 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985), and Smith v. City of Fontana, 818 F.2d 1411 (9th Cir.1987) (Smith ), cert. denied, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). The court stated, "[T]he possibility of Blair suffering further injury is not immediate enough to warrant a grant of standing in a proceeding based solely on a claim for equitable relief. Blair's claim for injunctive relief, however, is inextricably intertwined with his personal stake in the related claims for damages." Blair I, 775 F.Supp. at 1319. After deciding it had jurisdiction, the district court granted Blair's request for a declaratory judgment, holding that section 647(c) was unconstitutional on its face.
 
 
 8
 The court denied the request for a permanent injunction. Because Blair no longer begged, he could not make the needed showing of irreparable injury. Id. at 1320. Finally, in considering the claims for damages, the court held that the existence of disputed facts required that the resolution of those claims would have to wait until trial. Id. at 1329.
 
 
 9
 Although the damages claims were not yet resolved, the City and State wanted to obtain review of the declaration that section 647(c) was facially unconstitutional. They unsuccessfully moved the district court to certify an interlocutory appeal under Federal Rule of Civil Procedure 54(b). See Blair v. Shanahan, 795 F.Supp. 309, 311 (N.D.Cal.1992) (Blair II ) (discussing procedural history).
 
 
 10
 Thereafter, the City and Blair entered into settlement negotiations regarding the remaining claims. Blair proposed to the City an offer of judgment which would establish liability for First Amendment violations, among others, but which would "provide expressly that the City's rights to seek appellate review of the court's determination that Sec. 647(c) violates the First Amendment are not impaired by this stipulation." Id. (summarizing settlement offer).
 
 
 11
 The City never accepted or rejected this offer, but proposed its own offer of judgment under Federal Rule of Civil Procedure Rule 68, which Blair accepted unconditionally. See id. at 312. In the offer, the City allowed judgment to be taken against it on Blair's claims of false arrest and violations of the First, Fourth, and Fourteenth Amendments with respect to his arrests on four different occasions. It proposed allowing an award of damages to be taken against it in the total amount of $4,000. The City also allowed judgment to be taken against it on the claim for declaratory relief "in accordance with the Court's Opinion and Order." Id. In addition, all records of the arrests would be expunged. The remaining claims were to be dismissed and all defendants other than the City were to be dismissed with prejudice. The offer was silent as to the City's right to appeal.
 
 
 12
 The district court conducted a hearing regarding the offer of judgment and expressed its view that the judgment, as constructed, might preclude an appeal of the declaratory judgment. During this hearing, the City stated that it believed it could appeal the declaratory judgment; Blair disagreed. The district court then entered judgment pursuant to Rule 68. Id. at 312-13.
 
 
 13
 Apparently beginning to doubt that the declaratory judgment was appealable under the terms of the Rule 68 judgment, the City moved the district court to modify or vacate the judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. It argued that there was a misunderstanding and mistake in the formation of the agreement: Blair believed that the judgment would preclude an appeal, while the City thought an appeal was allowed. The district court denied the motion. Id. at 313-17.
 
 II
 
 14
 The City asks us to review the district court's denial of the Rule 60(b) motion to vacate or modify the offer of judgment. Motions for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) are committed to the sound discretion of the trial judge. Thompson v. Housing Authority, 782 F.2d 829, 832 (9th Cir.), cert. denied, 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986). We will not reverse the decision absent an abuse of discretion. Floyd v. Laws, 929 F.2d 1390, 1400 (9th Cir.1991).
 
 
 15
 The City fails to point out how the district court abused its discretion. At most, the City repeats to us the legal arguments that it made to the district court and asks us to resolve them opposite from the district judge's resolution. However, we do not review the district court's decision de novo. Under our review, we hold there was no abuse of discretion. On the contrary, its discussion of the reasons for refusing the motion are persuasive and compelling. See Blair II, 795 F.Supp. at 313-17.
 
 
 16
 The City argues that there was a mutual mistake in forming the agreement, since both Blair and the City thought that the judgment would preserve appeal rights. In the alternative, it argues that there was no meeting of the minds about the agreement if Blair did not intend to preserve appeal rights while the City did have such an intention. The simple fact is, however, that the right to appeal was not a term of the agreement. At most, the mistake or misunderstanding was in the parties' estimation of the future affect that the agreement would have on the right to appeal. As a result, there is no compelling reason to apply the mutual mistake analysis to the appealability issue. It was within the district court's discretion to reject the Rule 60(b) motion for this reason alone. The consent judgment stands.
 
 III
 
 17
 Even though it consented to entry of judgment and the consent judgment is silent as to any right to appeal, the City argues that it is not barred by the terms of the consent judgment from appealing the district court's order declaring section 647(c) facially unconstitutional. However, before we can determine whether the terms of the consent judgment bar an appeal, we must first decide, as a threshold matter, whether we are deprived of Article III jurisdiction to look at the issue because of the consent judgment's resolution of the damage claims.
 
 
 18
 The district court held that it had jurisdiction to entertain Blair's request for a declaratory judgment only because of the presence of the claims for damages. Blair would not otherwise have standing because he was no longer a panhandler. Blair I, 775 F.Supp. at 1318-20. The resolution of those damage claims, brought about by the consent judgment, raises obvious questions about whether the declaratory judgment remains an actual case or controversy which we may review.
 
 
 19
 "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case was decided by the court whose judgment we are reviewing." Burke v. Barnes, 479 U.S. 361, 363, 107 S.Ct. 734, 736, 93 L.Ed.2d 732 (1987). If Blair has lost standing to request declaratory relief due to the absence of the claims for damage, the case becomes moot, and we may not exercise jurisdiction. The Supreme Court has described "mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " United States Parole Commission v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (Geraghty ), quoting Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973).
 
 
 20
 The problem with Blair's standing to request declaratory relief is his lack of a legal interest in the enforceability of the statute, as it is unlikely that he will ever again desire to panhandle. Article III requires that Blair have "a legally cognizable interest in the outcome" of the litigation. Geraghty, 445 U.S. at 396, 100 S.Ct. at 1208. This concept has been referred to as the "personal stake requirement." Id. To establish a personal stake, Blair "must show that 'he has sustained or is immediately in danger of sustaining some direct injury.' " City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (Lyons ). However, in the context of Blair's request for declaratory or injunctive relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy ... if unaccompanied by any continuing, present adverse effects." Id. at 102, 103 S.Ct. at 1665, quoting O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 675-76, 38 L.Ed.2d 674 (1974); see also Smith, 818 F.2d at 1421 n. 17 (stating that the same test applies both to requests for declaratory and injunctive relief).
 
 
 21
 The personal stake requirement "serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving." Geraghty, 445 U.S. at 397, 100 S.Ct. at 1209. The presence of a personal stake assures "concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." Lyons, 461 U.S. at 101, 103 S.Ct. at 1665 (internal quotations omitted).
 
 
 22
 Contrary to what the City argues, the personal stake requirement does not disappear in a First Amendment challenge. Admittedly, courts have applied relaxed standing rules to First Amendment challenges. See Ripplinger v. Collins, 868 F.2d 1043, 1047 (9th Cir.1989) (Ripplinger), citing City Council v. Taxpayers for Vincent, 466 U.S. 789, 798-99, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984); Virginia v. American Booksellers Ass'n, 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988). However, neither we, nor the Supreme Court, have ever allowed plaintiffs to challenge a statute unless the plaintiffs had an "actual and well founded fear that the law will be enforced against them." Id. (emphasis added). We have consistently inquired whether the plaintiffs showed a reasonable threat of prosecution under the statute. See, e.g., Ripplinger, 868 F.2d at 1047; Polykoff v. Collins, 816 F.2d 1326, 1331 (9th Cir.1987). A "constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance." Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).
 
 
 23
 Blair's First Amendment claim for a declaratory judgment is moot if he no longer wishes to engage in activity proscribed by the challenged statute. In Zwickler, the plaintiff sought a declaratory judgment that a state criminal statute prohibiting the distribution of anonymous campaign literature violated the First Amendment. Subsequently, it was learned that the plaintiff no longer wished to distribute handbills because the member of Congress who was the target of the campaign would no longer run for office. Id. at 106, 89 S.Ct. at 958. The case was dismissed because it did not present a justiciable case or controversy. Id. at 110, 89 S.Ct. at 960-61.
 
 
 24
 Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), reaches a similar result. There the plaintiff sought a declaratory judgment that the use of a state trespass statute to criminalize handbilling against the Vietnam war was unconstitutional under the First Amendment. Because the American involvement in Vietnam had subsided since the filing of the suit, the Supreme Court remanded for the district court to determine whether petitioner still desired to engage in handbilling. If he would no longer distribute handbills, it could "no longer be said that this case presents a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 460, 94 S.Ct. at 1216 (internal quotations omitted).
 
 
 25
 Like the handbillers in Steffel and Zwickler, Blair lacks the personal stake necessary to litigate his request for a declaratory judgment because he no longer wishes to engage in the activity proscribed by the statute that he is challenging.
 
 
 26
 Several of our cases have created an exception to the personal stake requirement. We have held that when a plaintiff brings both a claim for damages and a related claim for equitable relief in the same lawsuit, a court may still exercise federal jurisdiction over the equitable claim, even though the plaintiff otherwise lacks a present personal stake in the claim for equitable relief. Smith, 818 F.2d at 1422; Giles, 746 F.2d at 619. This exception is limited to "situations where the two claims involve the same operative facts and legal theory." Smith, 818 F.2d at 1423. The Smith exception is based on the consideration that the presence of a claim for damages, if it rests on identical facts and legal theories as the claim for equitable relief, guarantees that the plaintiff has a personal stake in establishing the facts and legal theories underlying the claim for equitable relief as well. See id. at 1422-23.
 
 
 27
 This exception cannot apply to Blair at this stage of the litigation. The claims for damages were entirely satisfied in the consent judgment and no longer exist. Consequently, they cannot presently confer a personal stake in the declaratory judgment.
 
 
 28
 As the Smith exception cannot apply, Blair's lack of a personal stake in the declaratory judgment leaves us without jurisdiction to review the district court's order declaring section 647(c) unconstitutional. As a result, we may not even consider whether the exception articulated in Smith gave the district court itself Article III jurisdiction over the declaratory judgment. Therefore, our preceding discussion of the Smith exception should not be read as holding that Blair's claims for damages and equitable relief necessarily relied on identical facts and legal theories.
 
 
 29
 Our holding that the Smith exception does not apply to this case on appeal is narrow. As Blair's claims for damages are no longer live, we need not consider whether the Smith exception would be otherwise applicable if the damage claims still existed. Nor need we respond to the City's argument that other circuits have rejected the exception we formulated in Smith. See, e.g., Robinson v. City of Chicago, 868 F.2d 959, 967 (7th Cir.1989), cert. denied, 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 773 (1990).
 
 
 30
 Thus, appeal from this claim is dismissed.
 
 IV
 
 31
 The City argues in the alternative that if we hold that we have no jurisdiction to review the declaratory judgment, we should order the district court to vacate its judgment. Normally, "[t]he established practice ... in dealing with a civil case ... which has become moot while on its way here ... is to reverse or vacate the judgment below and remand with a direction to dismiss." United States v. Munsingwear, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). However, "[t]he Munsingwear rule is neither statutorily nor constitutionally required. It is equitable in nature, designed to maintain fairness between litigants who have been denied what would otherwise be an opportunity to challenge a prior adverse decision." National Union Fire Ins. Co. v. Seafirst Corp., 891 F.2d 762, 766 (9th Cir.1989).
 
 
 32
 In Ringsby Truck Lines v. Western Conference of Teamsters, 686 F.2d 720, 722 (9th Cir.1982) (Ringsby ), we held that the Munsingwear procedure of vacating the district court judgment does not apply when the appellant rendered the appeal moot by his own act. See Continental Casualty Co. v. Fibreboard Corp., 4 F.3d 777, 779 (9th Cir.1993). "The rationale behind this exception is that a dissatisfied litigant should not be allowed to destroy the collateral consequences of an adverse judgment by destroying his own right to appeal." Allard v. DeLorean, 884 F.2d 464, 467 (9th Cir.1989). In this case, the City rendered the appeal moot by its own act of proposing a consent judgment which satisfied the claims for damages. The Ringsby exception applies.
 
 
 33
 The Ringsby exception is based, in part, on preventing a litigant from misusing the automatic vacatur procedure established in Munsingwear. Litigants should not be permitted to bring a case, lose in the district court, settle with the winning party, and thereby have the trial court judgment vacated automatically so as to clear the path for another "test case" raising the same issues. But it does not follow that a litigant who does not intend to moot their appeal--as the City here maintains--should be excepted from the Ringsby rule. To allow such an exception would create the incentive for litigants to plead ignorance of the mootness rules, because the exception would provide litigants who did not understand that they were mooting their appeal with the benefit of having the lower court judgment automatically vacated--presumably not an unwelcome result.
 
 
 34
 Therefore, we will follow our established practice under Ringsby of remanding the question of trial judgment vacatur to the district court. The district court must then "balance the consequences and attendant hardships 'between the competing values of finality of judgment and right to relitigation of unreviewed disputes.' " Id., quoting Ringsby, 686 F.2d at 722. In balancing these consequences and attendant hardships, however, it is appropriate for the district court to take into account whether the City thought that the declaratory judgment would be unreviewable due to settlement. If the City would not have settled had it known it was mooting its appeal of the declaratory judgment, that fact equitably weighs in favor of vacating the judgment. The constitutional nature of the question is also a consideration.
 
 V
 
 35
 Among Blair's claims were requests for damages under the theory that section 647(c) violated the California Constitution. The district court granted summary judgment against Blair on these claims. Blair now cross-appeals from the summary judgment. Because we read the consent judgment to preclude appeal of the summary judgment, we will not review it.
 
 
 36
 We have previously followed the practice of looking at the language of the consent judgment and other evidence in the record to determine whether a party may appeal following an order entered by consent. Christian Science Reading Room v. City and County of San Francisco, 784 F.2d 1010, 1017 (9th Cir.1986), cert. denied, 479 U.S. 1066, 107 S.Ct. 953, 93 L.Ed.2d 1002 (1987). The consent judgment does not specifically mention its treatment of the claims based on the California Constitution. It does provide, however that the "remaining" ruling that is specifically referred to is the declaratory judgment. As to that claim, the consent judgment states that the City "allow[s] judgment to be taken against it ... in accordance with the Court's Opinion and Order." Blair II, 795 F.Supp. at 312. The consent judgment further states that the referenced relief will be entered as a final judgment under Rule 54 of the Federal Rules of Civil Procedure. The "remaining" claims are to be dismissed. The district court read the consent judgment to mean that "Blair's appeal rights as to the constitutionality of the statute under the California Constitution are foreclosed, because that claim is dismissed with prejudice under the Rule 68 offer." Id.
 
 
 37
 We review the district court's construction of a consent agreement de novo. Keith v. Volpe, 784 F.2d 1457, 1461 (9th Cir.1986). We agree with the district court. The offer of judgment resolves, for the sum of $4,000, all of the claims for damages that Blair may have had. He could gain nothing by establishing that he was entitled to relief under the California Constitution. Blair's counsel correctly stated just prior to the entry of the consent judgment, "[w]e do not believe that any appeal can be taken from an order that is procured with the consent of the parties. We believe that this matter is, in fact, concluded." Finally, we cannot reconcile Blair's strenuous argument to us that the consent judgment precludes the City's appeal from the declaratory judgment but not his appeal from the summary judgment on the state constitutional claims. Both are precluded.VI
 
 
 38
 The State raises two issues. First, the State argues that the district court abused its discretion in refusing to certify for interlocutory appeal the declaration that section 647(c) is unconstitutional. We review the refusal to certify an interlocutory appeal under Rule 54(b) for an abuse of discretion and give substantial deference to the district court. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 797-98 (9th Cir.1991).
 
 
 39
 There was no abuse of discretion. The district court fully considered the motion for interlocutory review and gave a reasoned explanation for its denial: it was expected that a short bench trial was to begin in only four months, and the entire case could be reviewed after trial.
 
 
 40
 The City argues that the denial of the interlocutory appeal prejudiced its chances of ever obtaining review of the ruling that section 647(c) is unconstitutional. However, this argument does not prove that the district court abused its discretion. At the time the court denied the motion, it could not have anticipated that the City would enter into a settlement that would preclude a review of the ruling.
 
 
 41
 The State also argues that it had standing to participate in the Rule 60(b) motion to vacate the consent judgment. The State intervened under 28 U.S.C. Sec. 2403(b) which gave it all the rights of a party "to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality." The State did not seek to intervene under Rule 24 of the Federal Rules of Civil Procedure.
 
 
 42
 The district court held that "under the terms of the statute through which the State intervened, the State has no standing either to join with the City's motion or present its own motion for vacation of the judgment." Blair II, 795 F.Supp. at 318. It explained that "[t]he proceeding currently before this Court has nothing to do with the constitutionality of Sec. 647(c). Any argument from the State concerning Rule 60(b) is vastly beyond the scope of its 'limited' right to address the constitutionality of Sec. 647(c)." Id. We review this ruling de novo. See Yniguez v. Arizona, 939 F.2d 727, 730 (9th Cir.1991).
 
 
 43
 The district court properly held that the motion to vacate the consent judgment had nothing to do with "facts and law relating to the question of [the] constitutionality" of section 647(c). 28 U.S.C. Sec. 2403(b). Though we understand the State's argument that it had an interest in vacating the consent judgment so that it could obtain review of the constitutionality of section 647(c), 28 U.S.C. Sec. 2403(b) does not allow a State standing to participate in a motion where questions of constitutionality are not among the issues argued.
 
 
 44
 AFFIRMED in part, DISMISSED in part, and REMANDED to the district court for consideration of whether to vacate its declaratory judgment.
 
 GARTH, Circuit Judge, dissenting:
 
 45
 Although I concur with much of the majority's decision,[1] I do not agree that we are constrained by Ringsby Truck Lines v. Western Conference of Teamsters, 686 F.2d 720, 722 (9th Cir.1982), to remand this case to the district court for it to determine in the first instance whether its constitutional determination should be vacated. Rather, I believe that the procedural context of the present litigation is governed by United States v. Munsingwear, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950) and therefore is completely distinguishable from the typical Ringsby case, which becomes moot pending appeal as the result of a settlement agreement. Therefore, Ringsby is inapposite. Consequently, I would dispose of the City's appeal not by returning the proceeding to the district court for its further consideration. Rather, I would dispose of the City's appeal by vacating so much of the district court's judgment as declared California Penal Code Sec. 647(c) unconstitutional, and remand to the district court with instructions to dismiss Blair's complaint, as Munsingwear requires. 340 U.S. at 39-40, 71 S.Ct. at 106-07. Because the majority has declined to do so, I dissent.
 
 
 46
 * I will assume for purposes of this discussion that the majority is correct in concluding that we lack jurisdiction to consider the City's appeal. We are faced then with the question of whether the district court's constitutional determination should be given res judicata or collateral estoppel effect where the City's appeal has been rendered moot as the result of the district court's entry of a consent judgment.
 
 A.
 
 47
 In United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), the United States had alleged price-fixing violations against Munsingwear and sued on two counts (1) for an injunction and (2) for treble damages. By agreement, the second count was held in abeyance pending trial of the suit for an injunction. The district court ultimately dismissed the complaint, holding that Munsingwear's prices complied with the regulation. The United States appealed but, while its appeal was pending, the commodity involved was decontrolled. Thereafter, the Court of Appeals dismissed the government's appeal as moot.
 
 
 48
 Munsingwear then moved to dismiss the treble damages action on the basis of res judicata. The district court granted the motion and the Court of Appeals affirmed. On appeal to the Supreme Court, the government argued that mootness, and the deprivation of its right to appeal, warranted an exception to the rule of res judicata. The Court, however, refused to adopt such an exception:
 
 
 49
 The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.... That procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance. When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary.
 
 
 50
 Id. at 39-40, 71 S.Ct. at 106-07. Because the government had failed to move to vacate the district court's judgment and, thus, had failed to "avail itself of the remedy it had to preserve its rights," the Court accorded the district court's judgment full res judicata effect and affirmed the dismissal of the treble damages action.
 
 
 51
 Munsingwear however has come to stand for the proposition that when an appeal has been rendered moot, it is "the duty of the appellate court" to vacate the lower court judgment so as to "prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." Id. at 40, 41, 71 S.Ct. at 107, quoting Duke Power Co. v. Greenwood County, 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936). Here, of course, unless the instant judgment is vacated, the legal consequences of that judgment, which holds Sec. 647(c) unconstitutional, will continue. This is the very result which Munsingwear decried and which the Munsingwear rule was designed to cure.
 
 
 52
 It is true that we have refused to apply the Munsingwear rule in every case where the appeal has become moot. In Ringsby Truck Lines, Inc. v. Western Conference of Teamsters, 686 F.2d 720 (9th Cir.1982), Ringsby had appealed from an unfavorable district court order. While its appeal was pending, the parties notified the Court of Appeals that they had settled their differences and asked us to vacate the district court's judgment.
 
 
 53
 We did not accept the parties' invitation. Noting that the district court's judgment would have been given collateral estoppel effect if Ringsby had failed to take an appeal in the first instance, we asked: "Should the situation be different where [an] appellant takes the appeal and subsequently dismisses it or by settlement secures its dismissal?" Id. at 722. We answered our rhetorical question with a resounding "maybe." We held that where an "appellant has by his own act caused the dismissal of the appeal and [where he, therefore,] is in no position to complain that his right of review of an adverse lower court judgment has been lost," the district court should make the initial determination as to whether its judgment should be given preclusive effect, based on a balancing of "the competing values of finality of judgment and right to relitigation of unreviewed disputes." Id.[2]
 
 B.
 
 54
 The majority believes that the present case falls squarely under the Ringsby rule and, accordingly, would remand to the district court for a vacatur determination. After all, the majority argues, the parties have settled their differences.
 
 
 55
 In the present case, however, the case was mooted, if at all, when the district court entered its judgment, i.e., when the district court approved the January 2, 1992 consent judgment. I have found no case in which a disputed issue was mooted by the district court itself--by the entry of a consent judgment--and where the Court of Appeals adhered to the formulation in Ringsby.
 
 
 56
 There is, in fact, good reason to depart from the Ringsby rule under the present circumstances. In the classic Ringsby-type case, the settling party is motivated to settle by its desire to put an end to further appellate litigation with respect to the substantive issues pending on appeal. The settlement, of course, cuts short, and thus destroys, the settling party's appellate rights. The Ringsby rule is appropriate in such a case because "a dissatisfied litigant should not be allowed to destroy the collateral consequences of an adverse judgment by destroying his own right to appeal." Allard v. DeLorean, 884 F.2d 464, 467 (9th Cir.1989).
 
 
 57
 In contrast, it is well established that a litigant, under certain circumstances, may preserve his right to appeal from a consent judgment, despite the fact that he has, in essence, settled the case. That is, although "[g]enerally, a party cannot appeal a judgment entered with its consent," Tapper v. Commissioner, 766 F.2d 401, 403 (9th Cir.1985), we have recognized three exceptions to this rule: (1) where the party did not actually consent; (2) where the district court lacked subject matter jurisdiction to enter the judgment; and (3) where the party preserved the right to appeal. Id.; Christian Science Reading Room Jointly Maintained v. City & County of San Francisco, 784 F.2d 1010, 1017 (9th Cir.1986).
 
 
 58
 Whether any one of these exceptions is applicable in the present case--and the City argues that all three exceptions do apply--is less important than the simple fact that the consent judgment doctrine, and its exceptions, exist at all, for it is the availability of review from a district court consent judgment which distinguishes a "consent judgment" settlement from a "settlement pending appeal." Quite simply, this is not a case in which the appellant has "caused" his appeal to be mooted in order to "destroy the collateral consequences of an adverse judgment." Rather, here the City consented to final judgment in the district court with the intent to pursue an appeal of the disputed constitutional issues as the record reveals.[3]
 
 
 59
 Clearly, the City's appeal has been mooted by a quirk, i.e., the fact that Blair, while once homeless, is now fully employed and unlikely ever again to be prosecuted under Sec. 647(c).[4] That is the reason that the settlement of Blair's damages claim had the collateral consequence of mooting Blair's equitable claim--a claim Blair would not have been permitted to assert were it not for his now-settled damages claim. See Giles v. Ackerman, 746 F.2d 614 (9th Cir.1984); Smith v. City of Fontana, 818 F.2d 1411 (9th Cir.1987).
 
 
 60
 In contrast to the situation in Ringsby, where it was the appellant who would have received a windfall had we automatically vacated the district court's judgment, here it is Blair, the appellee, who will receive such a windfall--i.e., the invalidation of Sec. 647(c)--if we do not vacate the district court's constitutional determination.
 
 II
 
 61
 I do not believe that Blair should be permitted to enjoin the City from enforcing a statute which he lacked standing to attack in the first place, simply because he settled his claim for damages against the City. By doing so, as the majority holds, he thereby mooted the City's appeal of the constitutional issue and precluded our review. This is not however, as the majority asserts, a Ringsby case. Rather, it is a pure and simple Munsingwear case which requires us to vacate the judgment below and remand to the district court with instructions to dismiss. Accordingly, the district court's order declaring Sec. 647(c) unconstitutional properly should be vacated pursuant to the duty that the Supreme Court imposed upon us--a duty which was not imposed upon the district court. Munsingwear, 340 U.S. at 39-40, 71 S.Ct. at 106-07.
 
 
 62
 Because the majority holds otherwise, I respectfully dissent.
 
 
 
 *
 Honorable Leonard I. Garth, United States Circuit Judge, Third Circuit Court of Appeals, sitting by designation
 
 
 [1]
 In particular, I agree with the majority that (1) the district court did not abuse its discretion in denying the City's Rule 60(b) motion to vacate or modify the consent judgment; (2) Blair was precluded by the terms of the consent judgment from appealing the district court's grant of summary judgment on Blair's state constitutional claims; (3) the district court did not abuse its discretion in refusing to certify the constitutional question for interlocutory appeal pursuant to Rule 54(b); and (4) the State of California lacked standing to participate in the Rule 60(b) proceedings
 
 
 [2]
 We consistently have applied the Ringsby rule to cases which are settled while pending on appeal. See Continental Cas. Co. v. Fibreboard Corp., 4 F.3d 777, 779 (9th Cir.1993); Riverhead Sav. Bank v. National Mortgage Equity Corp., 893 F.2d 1109, 1112-13 (9th Cir.1990); Allard v. DeLorean, 884 F.2d 464, 466-67 (9th Cir.1989)
 
 
 [3]
 The majority in describing the circumstances revealed by the record recites: "the City and State wanted to obtain review of the declaration that the section 647(c) was facially unconstitutional." Maj. Op. at 1517. The City unsuccessfully moved the district court to direct the entry of judgment under Fed.R.Civ.P. 54(b) after the declaratory judgment claim was adjudicated. Id. Without accepting or rejecting Blair's settlement offer, the City agreed to permit a judgment "in accordance with the Court's Opinion and Order." Id. at 1517. At the district court hearing regarding the offer of judgment, the issue of appeal arose and "the City stated that it believed it could appeal the declaratory judgment; Blair disagreed." Id. At the subsequent hearing on the Rule 60(b) motion, the City again sought to perfect its right to appeal. "It argued that there was a misunderstanding and mistake in the formation of the agreement: Blair believed that the judgment would preclude an appeal, while the City thought an appeal was allowed." Id. at 1518
 
 
 [4]
 In Harrison Western Corp. v. United States, 792 F.2d 1391 (9th Cir.1986), we refused to apply the Ringsby rule where actions by Harrison, the prevailing party, had caused the government's appeal to become moot. We noted:
 Insofar as the prevailing party causes an appeal to become moot, preservation of the district court judgment is problematic. By leaving that judgment in place, the appellate court may allow the prevailing party to preclude an appeal while retaining the collateral effects of its trial court victory. The appellate court ought to be particularly wary where, as here, it is the prevailing party that moves for dismissal, and the losing party that opposes the motion.
 Id. at 1394 n. 2 (vacating the district court's judgment and remanding with instructions to dismiss). We expounded upon this point in National Union Fire Ins. Co. v. Seafirst Corp., 891 F.2d 762, 767-68 (9th Cir.1989), emphasizing that, in Harrison Western, there had not been a Ringsby-type settlement. Rather, in Harrison Western:
 The government opposed the motion to dismiss and desired to pursue its appeal against Harrison.... The application of federal common law and the bidding process, not the agreement of the parties to stop fighting, caused the case against Harrison to become "unreviewable." Thus, it was appropriate to apply the Munsingwear rule and not the Ringsby rule.
 Id. at 767.
 As mentioned, in the present case, there was no "agreement of the parties to stop the fighting." To the contrary, the City very much wants to pursue its appeal of the district court's constitutional determination. It is precluded from doing so by the fact that Blair has settled his damages claim--the only claim which he had independent standing to assert--and, thus, mooted the constitutional issue. It is Blair, the prevailing party, who now asks us to dismiss the City's appeal, yet to preserve for him the benefit of the district court's underlying constitutional determination. Harrison Western cautions us to be "wary" of such a request under the present circumstances.