Daniel **DILLEY**, Plaintiff–Appellee,

v.

**Bryan S. GUNN, Warden; Norma Wells; Sgt. Butler; B. Schelke, Defendants–Appellants.**

No. 94–55133.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1995.

Decided Sept. 8, 1995.

Timothy C. Foote, Deputy Attorney General, San Diego, CA, for defendants-appellants.

Timothy B. Taylor, Karin Dougan Vogel, Sheppard, Mullin, Richter & Hampton, San Diego, CA, for plaintiff-appellee.

Before: FLETCHER, WIGGINS, and FERNANDEZ, Circuit Judges.

FLETCHER, Circuit Judge:

The defendants, prison officials at Calipatria State Prison ("Calipatria"), appeal a district court order requiring them to improve inmates' access to the prison's law library. The district court issued the order after entering summary judgment in favor of plaintiff Daniel Dilley, an inmate at Calipatria, on his claim that the defendants violated his right of access to the courts by failing to provide adequate access to the law library. We do not address the validity of the district court's order granting injunctive relief because this case became moot upon Dilley's transfer from Calipatria to another state prison facility.

## I

Daniel Dilley, who then was an inmate in the "C" facility at Calipatria, filed a first amended complaint under 42 U.S.C. § 1983 alleging among other things that the defendants had violated his right of access to the courts under *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), by failing to provide reasonable access to the Facility "C" law library. The district court found that the undisputed facts alleged in Dilley's complaint established that the defendants had failed to provide Dilley constitutionally adequate access to the law library; accordingly, the court granted Dilley's motion for summary judgment on this claim and appointed a magistrate judge as Special Master to recommend to the district court a plan to improve library access.[1]

After touring Calipatria and the Facility "C" law library, conducting hearings, and reviewing the defendants' proposed plan and Dilley's objections to it, the Special Master filed a report making his recommendations to the district court. The Special Master recommended expanding both the size of the library and its holdings; permitting inmates either to have open access to the stacks or to check out four, rather than three, books at a time; a training program for inmate law clerks; increasing both the length and frequency of inmates' visits to the library; implementing a system for scheduling inmates' use of the library; and providing more opportunities for inmates with jobs to use the library. The Special Master also recommended that the district court retain jurisdiction over the case and schedule a hearing after six months for the Special Master to assess Calipatria's compliance with the plan. Judge Keep adopted the Special Master's report in full on December 15, 1993, and the defendants filed a timely notice of appeal.

## II

As an initial matter, we must determine the scope of this appeal. The defendants' opening brief challenged only the district court's order requiring them to improve inmates' access to the law library; only in their reply brief did the defendants attempt to challenge the district court's grant of Dilley's motion for summary judgment, in which the district court held that the defendants had violated Dilley's right of access to the courts by failing to provide reasonable access to the law library. Issues not raised in the opening brief usually are deemed waived. *All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu,* 7 F.3d 1427, 1434 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1301, 127 L.Ed.2d 653 (1994).

The defendants maintain, however, that their opening brief did challenge the district court's grant of Dilley's motion for summary judgment. They rely on the fact that they argued in their opening brief that Dilley had failed to show an "actual injury" resulting from inadequate access to the law library. The defendants maintain that because a plaintiff must demonstrate an "actual injury" to prevail on a claim of inadequate library access, *Vandelft v. Moses,* 31 F.3d

---

1. The district court did not, however, award damages to Dilley, because it held that the defendants enjoyed qualified immunity. *See Wood v. Strickland,* 420 U.S. 308, 315 n. 6, 95 S.Ct. 992, 997 n. 6 (1975) ("immunity from damages does not ordinarily bar equitable relief as well"). Dilley does not appeal this ruling.

**1368**

794, 796–97 (9th Cir.1994),[2] their opening brief's argument that the district court should have considered Dilley's failure to demonstrate such an injury constituted an appeal of the district court's grant of Dilley's motion for summary judgment.

■ The defendants' argument is meritless. Although the defendants' opening brief argued that Dilley had failed to establish that he had been denied access to the courts, it did not ask us to reverse the district court's grant of Dilley's motion for summary judgment. Rather, the defendants' addressed the issue of "actual injury" only to advance their argument that the district court *in fashioning the appropriate remedy* should have considered Dilley's alleged failure to demonstrate that he was denied access to the courts as a result of the defendants' policies governing law library access.[3] Although "actual injury" to court access is an element of a plaintiff's claim that he has been denied constitutionally adequate access to the law library, it does not follow that any argument which mentions the plaintiff's failure to demonstrate actual injury constitutes an appeal regarding the merits of the plaintiff's case.

Our conclusion that the defendants have appealed only the district court's order granting injunctive relief, not the district court's determination that the defendants violated Dilley's constitutional rights, is supported by the defendants' notice of appeal in this case, which states clearly that the defendants intended to appeal "from the final Judgment and Order ... adopting the findings and recommendations of Magistrate Judge/Special Master to alter the physical layout of law libraries at Calipatria State Prison, directing the means of providing additional inmate access to the law libraries, and retention of jurisdiction over this case for six months to assess compliance with the

plan." Because the defendants did not challenge the district court's grant of Dilley's motion for summary judgment in their opening brief, this issue is waived and the sole issue on appeal is whether the district court surpassed its authority in fashioning an appropriate remedy for a proven constitutional violation.

### III

■ The defendants argue that this case is moot. We agree. Since the district court granted injunctive relief in this case, Dilley has been transferred from Calipatria to another California state prison. An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action. *Preiser v. Newkirk,* 422 U.S. 395, 402–03, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975); *Johnson v. Moore,* 948 F.2d 517, 519 (9th Cir.1991); *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986).

■ Dilley argues that this case is "capable of repetition, yet evading review." *See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. Interstate Commerce Comm'n,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). This exception to the mootness doctrine applies when (1) the challenged action is too short in duration to be fully litigated prior to its expiration and (2) there is a reasonable expectation that the injury will occur again. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam). Dilley's claim falls short with respect to each of these requirements.

■ First, an inmate's "claim of inadequate access to legal materials is not one that

---

2. To prevail on a "non-core" *Bounds* claim, a plaintiff must show that the alleged inadequacies resulted in an "actual injury," defined as a "specific instance in which an inmate was actually denied access to the courts." *Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989). Traditionally, claims of an inadequate library are "core" *Bounds* claims, *id.,* and claims of inadequate legal supplies, such as photocopies, pens, and paper, are not, *e.g., Allen v. Sakai,* 48 F.3d 1082, 1090 (9th Cir.1994), *cert. denied,* —— U.S. ——,

115 S.Ct. 1695, 131 L.Ed.2d 559 (1995). In *Vandelft,* we held that a claim of inadequate access to the law library is a non-core *Bounds* claim. 31 F.3d at 796–97.

3. We do not address whether Dilley established a "specific instance in which [he] was actually denied access to the courts." *See Sands,* 886 F.2d at 1171.

will evade review." *Wiggins v. Rushen,* 760 F.2d 1009, 1011 (9th Cir.1985) ("This case neither challenges a court order which, by its own terms, expires in a few days nor raises questions which are mooted by the termination of a nonjudicial activity that is of short duration."). The scores of cases in which we have reviewed claims by inmates that prison officials failed to provide adequate access to prison law libraries demonstrate that these cases do not generally evade review. *E.g., Casey v. Lewis,* 43 F.3d 1261 (9th Cir.1994), *cert. granted,* ─── U.S. ───, 115 S.Ct. 1997, 131 L.Ed.2d 999 (1995); *Vandelft v. Moses,* 31 F.3d 794 (9th Cir.1994); *Gluth v. Kangas,* 951 F.2d 1504 (9th Cir.1991); *Johnson,* 948 F.2d 517; *Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851 (9th Cir.1985). Dilley has not alleged and our independent review has not revealed any reason why the general rule enunciated in *Wiggins* should not control.

Second, Dilley has not demonstrated a reasonable expectation that he will be transferred back to Calipatria and subjected again to law library policies depriving him of meaningful access to the courts. When Dilley filed this lawsuit, he was classified as a Class IV inmate, which in California's classification system represents the highest level of risk to prison security. Dilley was transferred from Calipatria to a lower-level security institution when he was reclassified as a Class III inmate. Calipatria does not house Class III inmates, and Dilley would be reclassified as a Class IV inmate only if he were to commit a serious violation of prison rules. Accordingly, Dilley's claim that he might be transferred back to Calipatria some time in the future is "too speculative" to prevent mootness. *See Wiggins,* 760 F.2d at 1011; *see also Reimers v. Oregon,* 863 F.2d 630, 632 & n. 4 (9th Cir.1988) (plaintiff who had been released from prison had no reasonable expectation of return because such return would occur only if the plaintiff committed additional criminal acts).

## IV

In addition to seeking dismissal of their own appeal, the defendants request that we vacate the district court's order as moot. We remand for the district court to determine whether the injunction should be vacated.

## A

The leading case on vacatur is *United States v. Munsingwear,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950), where the United States argued that a district court opinion should not have been given *res judicata* effect when the United States was prevented from appealing the adverse judgment because the case had become moot while pending before the Court of Appeals. The United States maintained that "those who have been prevented from obtaining the review to which they are entitled should not be treated as if there had been a review." *Id.* at 39, 71 S.Ct. at 106. The Supreme Court disagreed, reasoning that any unfairness to the United States was preventable because the United States had "slept on its rights" by failing to ask the Court of Appeals to vacate the district court's decision before the appeal was dismissed. *Id.* at 39–41, 71 S.Ct. at 106–07. In dictum, the Supreme Court stated that "[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." *Id.* at 39, 71 S.Ct. at 106. The Court explained that the procedure of automatic vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance. When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary." *Id.* at 40, 71 S.Ct. at 107.

In the decades since *Munsingwear,* we have treated automatic vacatur as the "established practice," applying whenever mootness prevents appellate review. *E.g., In re Davenport,* 40 F.3d 298, 299 (9th Cir.1994); *Funbus Systems, Inc. v. California Pub. Utils. Comm'n,* 801 F.2d 1120, 1131 (9th Cir.1986); *DHL Corp. v. Civil Aeronautics Bd.,* 659 F.2d 941, 944 (9th Cir.1981); *Boggess v. Ber-*

*ry Corp.*, 233 F.2d 389, 393 (9th Cir.1956). Recognizing, though, that the *Munsingwear* rule was neither statutorily nor constitutionally required, *see National Union Fire Ins. Co. v. Seafirst Corp.*, 891 F.2d 762, 766 (9th Cir.1989), we acknowledged what has been called an "exception" to the established practice of automatic vacatur when an appeal is mooted and appellate review prevented not due to "happenstance," *see Munsingwear,* 340 U.S. at 39, 71 S.Ct. at 106, but "when the appellant has by his own act caused the dismissal of the appeal." *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720, 722 (9th Cir.1982); *see National Union,* 891 F.2d at 765–769 ("elaborat[ing] on the strength and merit of *Ringsby*").

Recent guidance from the Supreme Court requires some adjustment to the analytical framework which governs our decision whether or not to vacate a district court judgment when mootness prevents appellate review. In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), the Supreme Court addressed whether an appellate court should vacate a lower court's judgment when the parties to the suit settled pending appeal of the judgment, thereby rendering the appeal moot. Emphasizing the equitable nature of vacatur, the Supreme Court held that *Munsingwear* is "inapplicable" when mootness results from the parties' settlement because, in these cases, "[t]he judgment is not unreviewable, but simply unreviewed by [the appellant's] own choice." *Id.* at ——, 115 S.Ct. at 392.

■ *U.S. Bancorp* makes clear that the touchstone of vacatur is equity. Although the Supreme Court "st[ood] by *Munsingwear's* dictum that mootness by happenstance provides sufficient reason to vacate," —— U.S. at ——, 115 S.Ct. at 391 n. 3, it rejected the notion that automatic vacatur was the "established practice" *whenever* mootness prevents appellate review of a lower court decision. *Id.* at —— –– ——, 115

S.Ct. at 390–93. Rather, the Court instructed that "[t]he reference to 'happenstance' in *Munsingwear* must be understood as an allusion to [the] equitable tradition of vacatur. A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Id.* at ——, 115 S.Ct. at 391. Similarly, a litigant should not be bound by an adverse unreviewed judgment "when mootness results from unilateral action of the party who prevailed below." *Id.* at ——, 115 S.Ct. at 392.

However, as *U.S. Bancorp* demonstrates, the equitable principles weighing in favor of vacatur in these situations cut the other direction where the appellant by his own act prevents appellate review of the adverse judgment. "The denial of vacatur [in such a case] is merely one application of the principle that '[a] suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.'" *Id.* at ——, 115 S.Ct. at 392 (quoting *Sanders v. United States,* 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963)). Thus, *U.S. Bancorp* suggests that the *Ringsby* rule is no "exception" to *Munsingwear* at all. Rather, *Ringsby* and *Munsingwear* exemplify two different applications of the identical principles.[4]

■ Like *Munsingwear,* *Ringsby* is wholly consistent with the "equitable tradition of vacatur" reflected in *U.S. Bancorp. See U.S. Bancorp,* —— U.S. at ——, 115 S.Ct. at 391. The rationale underlying *Ringsby* "is that a dissatisfied litigant should not be allowed to destroy the collateral consequences of an adverse judgment by destroying his own right to appeal." *Allard v. DeLorean,* 884 F.2d 464, 467 (9th Cir.1989); *see also Ringsby,* 686 F.2d at 722 (an appellant who moots his own appeal "is in no position to complain that his right of review of an adverse lower court judgment has been lost"). Thus, when an appellant renders his appeal moot by his own act, our established procedure is not to vacate the district court's decision automatical-

---

**4.** Two of our sister circuits have also recognized that, after *U.S. Bancorp,* automatic vacatur under *Munsingwear* can no longer be viewed as the "established practice" whenever a case becomes moot on appeal, and that the primary inquiry is whether the appellant caused the mootness by his own voluntary act. *See Jones v. Temmer,* 57 F.3d 921, 923 (10th Cir.1995); *Associated Gen. Contractors of Connecticut, Inc. v. New Haven,* 41 F.3d 62, 67 (2d Cir.1994).

ly, but to remand so the district court can decide whether to vacate its judgment in light of "the consequences and attendant hardships of dismissal or refusal to dismiss" and "the competing values of finality of judgment and right to relitigation of unreviewed disputes." *Ringsby*, 686 F.2d at 722; *e.g., Blair v. Shanahan*, 38 F.3d 1514, 1521 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1698, 131 L.Ed.2d 561 (1995); *Continental Casualty Co. v. Fibreboard Corp.*, 4 F.3d 777, 779 (9th Cir.1993); *Bates v. Union Oil Co. of California*, 944 F.2d 647, 650 (9th Cir.1991), *cert. denied,* 503 U.S. 1005, 112 S.Ct. 1761, 118 L.Ed.2d 424 (1992); *Scott v. Iron Workers Local 118*, 928 F.2d 863, 866 (9th Cir.1991); *Riverhead Savings Bank v. National Mortgage Equity Corp.*, 893 F.2d 1109, 1113 (9th Cir.1990); *Allard*, 884 F.2d at 467.

■ The facts surrounding Dilley's transfer from Calipatria are not sufficiently developed in the record for us to determine whether *Munsingwear* or *Ringsby* controls this case. Accordingly, we remand to the district court not only to consider the relevant factors under *Ringsby*, but also to determine as a threshold matter whether *Ringsby* applies in this case. If Dilley's transfer from Calipatria was due to "happenstance," the district court's order granting injunctive relief should be vacated under *Munsingwear*.[5] *See Martinez v. Wilson*, 32 F.3d 1415, 1420 (9th Cir.1994) (vacating injunction issued by district court when subsequent legislative amendment rendered plaintiffs' claims moot). If, however, the defendants were responsible for Dilley's transfer, the district court should consider the relevant factors under *Ringsby* to determine whether or not to vacate the order granting injunctive relief. *See Bates*, 944 F.2d at 650 (purpose of the *Ringsby* balancing process is to enable the district court to consider fully the consequences of the requested vacatur).

**B**

■ We offer the following as guidance to the district court on remand. As a general matter, *Ringsby* may apply even when both parties play a role in the events mooting the appeal. In *National Union*, we rejected a proposed "unilateral/bilateral distinction," under which "a case made moot by the action of one party to the action would not be vacated, but if made moot by action of both parties, ... vacatur would be granted upon request." 891 F.2d at 767; *accord U.S. Bancorp,* —— U.S. at ——, 115 S.Ct. at 392 ("It is [the appellant's] burden, as the party seeking relief from the status quo of the [lower court] judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur"). The relevant inquiry "is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp,* —— U.S. at ——, 115 S.Ct. at 391; *accord Anderson v. Green,* —— U.S. ——, ——, 115 S.Ct. 1059, 1060, 130 L.Ed.2d 1050 (1995) (under *U.S. Bancorp*, the "pivotal" inquiry in determining whether to vacate the lower court's judgment is whether the appellant caused the mootness by voluntary action).

■ Moreover, if an appellant is responsible for mooting its own appeal, *Ringsby* can apply even if the appellant engaged in the conduct which caused the mootness for a purpose other than to prevent the appellate court's review of the district court's order. We recently held that, although a primary purpose of *Ringsby* is to prevent the litigant from abusing the equitable remedy of vacatur by purposefully mooting his own appeal, the *Ringsby* rule, not the standard underlying it, determines whether automatic vacatur should be granted. *See Blair*, 38 F.3d at 1521. Thus, "a litigant who does not intend to moot [his] appeal ... [is not] excepted

---

5. Because the defendants appealed only the district court's order granting injunctive relief, our dismissal of this appeal as moot provides no basis for vacating the district court's grant of Dilley's motion for summary judgment. *See Karcher v. May*, 484 U.S. 72, 83, 108 S.Ct. 388, 395, 98 L.Ed.2d 327 (1987) (*Munsingwear* practice of automatic vacatur inapplicable where the

"controversy did not become moot due to circumstances unattributable to any of the parties" but "when the losing party ... declined to pursue its appeal"); *cf. Kitlutsisti v. ARCO Alaska, Inc.*, 782 F.2d 800, 801–02 (9th Cir.1986) (court will not selectively vacate only portions of a single district court opinion from which the appellants appealed).

from the *Ringsby* rule." *Id.*[6] "To allow such an exception would create the incentive for litigants to plead ignorance of the mootness rules, because the exception would provide litigants who did not understand that they were mooting their appeal with the benefit of having the lower court judgment automatically vacated—presumably not an unwelcome result." *Id.*

■ These general rules have been created, however, in the settlement context, where the appellant's agreement to settle the case while its appeal was pending prevented appellate review of the challenged judgment. *Munsingwear* does not control when an appeal is mooted due to the appellant's decision to change its litigation position—even though the appellee agreed to the settlement voluntarily and even if the appellant did not intend to hinder appellate review—because the conduct of the parties as litigants cannot be attributed to "happenstance."

This case, however, arises in a significantly different context. The administration of a prison does not grind to a halt the moment an inmate files a lawsuit. The defendants had a relationship to Dilley other than as litigants; they continued to be responsible for Dilley's food, clothing, shelter, and safety and for the day-to-day administration of Calipatria. *See Farmer v. Brennan*, — U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). The appellants maintained at oral argument that Dilley was transferred pursuant to prison regulations which permit an inmate to transfer to a lower security institution once he has served a specific amount of time as a Class IV inmate without substantial disciplinary problems. If so, Dilley's transfer from Cali-

patria was wholly unrelated to this lawsuit and would have occurred in the absence of this litigation. Mootness resulting from such a transfer would be attributable to "happenstance" within the meaning of *Munsingwear*, even if the defendants, as employees of the state's prison system, did play some administrative role in the transfer. To hold otherwise might create an incentive for prison officials to hinder routine transfers that would otherwise be available to and desired by inmates who have obtained favorable but not yet reviewed judgments in the district court.

If the district court concludes that Dilley's transfer from Calipatria occurred "by happenstance," then automatic vacatur is appropriate under *Munsingwear*. If, however, the district court finds that the defendants played a role in Dilley's transfer and that the transfer was related to the pendency of this appeal, then *Ringsby* applies to this case and the district court must then decide whether to vacate the injunction in light of "the consequences and attendant hardships of dismissal or refusal to dismiss" and the "competing values of finality of judgment and right to relitigation of unreviewed disputes." *Ringsby*, 686 F.2d at 722. In applying these equitable principles, the district court should consider among other relevant facts that Dilley, the only plaintiff to this lawsuit, is no longer incarcerated at Calipatria.

## CONCLUSION

This appeal is moot because the plaintiff is no longer incarcerated at Calipatria and has failed to demonstrate that his claim is one capable of repetition, yet evading review. We remand to the district court to determine

---

**6.** In *Scott v. Iron Workers Local 118*, 928 F.2d 863 (9th Cir.1991), we described the *Ringsby* exception as applying "in the narrow situation in which the appellant, having lost in the court below *and desiring to avoid the collateral estoppel effects of the lower court decision*, causes his appeal to become moot." *Id.* at 865 (emphasis added). *Blair*, however, makes clear that the appellant's intent is irrelevant in determining as a threshold matter whether automatic vacatur applies or whether *Ringsby's* exception to *Mun-*

*singwear* controls. Moreover, in *U.S. Bancorp*, the Supreme Court denied the petitioner's motion to vacate our court's unreviewed decision, but did not expressly find that the appellants had settled the case with the intent of mooting the appeal and vacating the adverse judgment. Of course, if the district court determines that the appellant did not intend to avoid appellate review and to have the district court's order vacated, that factor may weigh equitably in favor of vacating the order. *See Blair*, 38 F.3d at 1521.

whether the order granting injunctive relief should be vacated.

REMANDED.

FERNANDEZ, Circuit Judge, concurring:

I concur in the majority opinion with one caveat. I think it would be the rarest of rare cases when an injunction could continue in full force and effect even though the matter had become moot.

Injunctions are not general statutes. They run in favor of a party and direct the other party to do something for the first party's benefit. If the first party can no longer have any legal interest in the relief in question, it is most difficult to see how the injunction can possibly remain in place. I know of no case of ours which even hints that it can. *See, e.g., Sample v. Borg,* 870 F.2d 563 (9th Cir. 1989); *Kitlutsisti v. ARCO Alaska, Inc.,* 782 F.2d 800, 801 (9th Cir.1986). Of course, that is not to say that all of the findings which support the injunction must be dismantled. They could be left in place, just as findings supporting any other judgment could be. But the relief itself—the injunction—must fall. At least, it must in every case that I can foresee.

However, because my powers of vaticination are not infinite, on the off chance that some confluence of circumstances will show that this injunction can continue, I concur. Thus, with misgivings, I refrain from joining the ranks of those who have predicted that some event or other could never possibly happen.